YELLOW MANUFACTURING ACCEPTANCE CORPORATION
*v.* LINSKY ET AL.*

[No. 14,551.   Filed November 15, 1934.]

*NOTE—Published out of order because not received sooner by Reporter.

692

Miller & Miller, for appellant.

Garrett W. Olds, and John W. Becker, for appellees.

DUDINE, J.—Appellant has filed a petition for rehearing herein and the court having considered said petition for rehearing, now grants a rehearing of this cause, and the court now renders the following opinion in lieu of the opinion heretofore rendered on May 18, 1934.

Martin J. Linsky purchased two busses from General Motors Truck Company on a "finance" plan. The transaction was evidenced by two "conditional sales contracts," one for each of the vehicles. These contracts were duly assigned to appellant Yellow Manufacturing Acceptance Corporation. Linsky became in default as to the payments under each of said contracts. Appellee administratrix authorized appellee Mullen, a garage man, to repair said vehicles. She told Mullen they were paid for, and he, relying on that statement, and not knowing that the vehicles were not fully paid for, did make certain repairs. Appellee Mullen received no payment whatever for said repairs.

Appellant having made a demand for the surrender of said property, which demand was refused, appellant filed a suit in replevin in two paragraphs against both appellees. The first paragraph prayed recovery of the busses and the second prayed recovery of the radiator and motor, which appellee Mullen had put on and in one of said busses. Under appellees' failure to post bond, appellant filed replevin bonds, which were approved, and

the property was delivered to appellant. Thereafter appellee Mullen filed an answer in abatement, alleging that appellant was a foreign corporation and had not qualified itself under the laws of Indiana to transact business in Indiana, to which answer appellant filed a reply in general denial. Thereafter appellee Mullen filed an answer in three paragraphs, 1st, general denial; 2nd, that appellant is a foreign corporation and not authorized to transact business in Indiana; 3rd, setting up his common law lien for repairs. Appellant filed a reply in general denial to the third paragraph of answer, and a motion to strike out the second paragraph of answer, which motion was overruled.

The cause was submitted to the court for trial upon said issues. Appellee Linsky, administratrix, having failed to appear, she was defaulted. The court found for appellee Mullen and against appellant "upon each paragraph of plaintiff's complaint," that Mullen was entitled to immediate possession of all said property, that said property was of the value of $604.70, and that Mullen had been damaged by the unlawful detention thereof, in the sum of $56.30, and the court rendered judgment accordingly.

Appellant seasonably filed a motion for new trial alleging, 1st, that the decision is not sustained by sufficient evidence; 2nd, the decision is contrary to law; 3rd, amount of recovery is too large. Said motion was overruled, and this appeal was perfected, the errors assigned on appeal being, 1st, error in overruling appellant's motion to strike out appellee's second paragraph of answer; 2nd, error in overruling said motion for new trial.

With reference to said first assigned error, we need merely note that the trial court found against appellant on each of its paragraphs of complaint. Appellant having failed in its burden of proof as to any of its paragraphs of complaint, the decision could

not have been affected by the court's ruling on appellant's motion to strike appellee's second paragraph of answer. Since the court's ruling on said motion to strike said second paragraph of answer did not affect the court's decision, it was harmless, and even though the ruling were erroneous, it would not constitute reversible error. Sec. 426, Burns 1926, §2-1071 Burns 1933, §175, Baldwin's 1934.

Appellant contends that the decision is contrary to law because it gave Mullen's common law mechanic's lien priority over appellant's pre-existing conditional vendor's title; that a conditional vendor's title is superior to a subsequent mechanic's lien. Appellee insists that the law is contrary to said contention.

We think that question was determined by our Supreme Court in the recent case of *Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 292, 187 N. E. 382.

In that case (quoting from the opinion, p. 298) "The court found that on the 8th day of February, 1928, Penova, the owner of the automobile in question, executed and delivered to appellant his chattel mortgage to secure the payment of $678.80 loaned to him at the time, which mortgage was duly recorded on February 14, 1928, in Cook county, Illinois, the residence of the mortgagor. That the mortgage provides that upon failure to pay any monthly instalment when due, all instalments shall become immediately due and payable, and that mortgagee shall have the right to take possession of said automobile without notice. That it provides further that the mortgagor shall retain possession of the automobile until default is made, and that the mortgagor 'shall keep said automobile in good repair at his own expense.' That Penova defaulted in payments in May, 1928, before the beginning of the action. That at the time the action was commenced there was due the appellant the sum of $523 with interest. That on June 1, 1928, Penova, without

the knowledge or consent of appellant, placed the automobile in the hands of appellee to be repaired, and requested appellee to repair the same, and that appellee did perform the necessary work and furnish the necessary materials in repairing said automobile. That the reasonable value of said repairs is $936.62, which is unpaid and due, and that the repairs so made greatly increased the value of said automobile, and were necessary to keep said automobile in good condition. That appellee at the time of making said repairs had no actual knowledge that there were any liens or claims upon or against the automobile, and that appellant had no knowledge or information that repairs were being made until after the repairs had been made. That the appellee, after making the repairs, retained possession of said automobile until the same was taken away by the writ of replevin issued in the case, and that the appellant made due demand for possession of the automobile before bringing the suit, and that appellee refused to surrender possession. That the value of the automobile at the time it was taken by the writ of replevin on July 7, 1928, was $1,250.

"Upon the findings the court concluded the law to be that the mortgagor, Penova, was the agent of the appellant in having the repairs made on the car. That the appellee is entitled to a common law lien in the sum of $936.62, with interest from July 7, 1928, and is entitled to recover that amount, and that in the event it is not paid with interest in thirty days, the appellee shall be entitled to receive the possession of the car for the purpose of enforcing its lien against the same.

"The errors assigned (in the appeal of said cause) involved the question of whether a repairman's lien took precedence over a prior executed and recorded chattel mortgage."

The Supreme Court, in discussing that question said, (p. 301) :

"We think the entire matter must be controlled by the intention of the mortgagee as expressed in or implied from the terms of the mortgage contract.

"Where the mortgagor is given the right or charged with the duty of procuring repairs, or where the contract is silent upon the subject and the property is a vehicle or machinery of such a nature that it is apparent that the object complete and fit for use, and not its component or broken parts, is relied upon by the mortgagee as security, and when it is contemplated that the property is to be used by the mortgagor, and it is of such a character that the necessity of repairs may be reasonably anticipated, necessary repairs which add to the value of the property are required to preserve the security of the mortgagee and are a benefit to him, and authority for the mortgagor to have such repairs made will be implied from the circumstances. In either case the mortgagor will be constituted the agent of the mortgagee for the purpose of procuring repairs.

"When the mortgagor, acting for himself and as the agent of the mortgagee, delivers the mortgaged property and authorizes the making of repairs or the furnishing of material and supplies therefor, a contract arises between the mortgagor and the mortgagee on the one hand and the mechanic or artisan on the other, and the law creates a lien in favor of the latter which will bind the property, notwithstanding an additional agreement between the mortgagor and the mortgagee that the mortgagee shall pay for the repairs, or even an agreement that no liens shall be incurred, since the law creates the lien and not the consent of the parties. The lien will be enforceable unless it is expressly or impliedly waived. The waiver must be intentional and it cannot be implied from terms and conditions in the mortgage contract of which the mechanic has no actual knowledge. The repairs for which the lien will be enforced must be neces-

sary and add to the value of the property, but since the mortgagor must be treated as the agent of the mortgagee, the property will be bound for any repairs ordered by him and furnished unless they are clearly beyond this requirement."

We note that the Grusin case did not involve a conditional vendor's title and a common law mechanic's lien, as does the instant case, but we can not see why the reasoning of the Supreme Court in said case is not applicable to the question of priority as to a conditional vendor's title and a subsequently acquired common law mechanic's lien.

The basis of the precedence given to the common law lien as against the pre-existing recorded mortgage in the Grusin case, was the express or implied assent from the terms of the mortgage contract. That decision of the Supreme Court did not rest upon the fact that the mortgagor, who ordered the repairs, had title to the property. Therefore the fact that appellee Linsky, administratrix, who ordered the repairs in the instant case, did not have title to the property does not make said Grusin case inapplicable.

The conditional sales contract in the instant case provided:

"5. The buyer shall at his own expense keep said goods in first class order, repair and running condition, and shall keep said goods free from all taxes, liens and encumbrances, . . .

"6. It is expressly understood and agreed that until all payments have been made, as in this contract provided, and all the terms, provisions, covenants, and conditions herein contained on the part of the buyer to be kept or performed have been fully complied with by the buyer, the buyer shall have no right, power or authority to sell, transfer, assign, mortgage, encumber or in any

other manner whatsoever dispose of said goods or any part thereof, or any interest therein, . . ."

Certainly said provision number five gave the purchaser the right to procure repairs. The busses were property "of such a nature that it is apparent that the object(s) complete, and fit for use, and not its component or broken parts is (was) relied upon by the mortgagee (conditional vendor) as security," and it certainly was "contemplated that the property is (was) to be used by the mortgagor (conditional vendee) and it is (was) of such a character that the necessity of repairs may (might) be reasonably anticipated." (Quotations from Grusin case, *supra*.)

In such instances, the Grusin case holds, the mortgagor will be constituted the agent of the mortgagee, and being bound by said decision, we hold that in such instances, where the conditional vendor-conditional vendee relationship exists in lieu of the mortgagee-mortgagor relationship, the conditional vendee will be constituted the agent of the conditional vendor. Therefore, even though this court, in the absence of the Grusin case, might have held otherwise, we hold on authority of said Grusin case that appellee Linsky, administratrix, was the agent of appellant and bound appellant to pay for necessary repairs to said busses, which added to the value thereof.

Provisions five and six of the conditional sales contract do not prevent the creation of liens because applying the language of the Supreme Court in the Grusin case to the facts in this case we are forced to hold that when the conditional vendee, acting for himself and as the agent of the conditional vendor, delivers the property conditionally sold, and authorizes the making of repairs or the furnishing of material and supplies therefor a contract arose between the conditional vendee and the conditional vendor on the one hand and the

mechanic or artisan on the other, and the law created a lien in favor of the latter which bound the property *notwithstanding an additional agreement between the conditional vendee and the conditional vendor that the conditional vendee shall pay for the repairs, or even an agreement that no liens shall be incurred,* since the law and not the consent of the parties creates the lien.

Appellant further contends the judgment is contrary to law inasmuch as a judgment for damages for detention of the property was given, and had not been prayed by appellee. Sec. 601, Burns 1926, §2-2025, Burns 1933, §358, Baldwin's 1934, and authorities cited thereunder clearly authorized the trial court to render judgment for such damage.

Under its assigned error that the amount of the judgment is too large appellant contends that appellee was not entitled to anything more than his equity in the trucks over and above appellant's lien for the balance of the unpaid purchase price of the trucks; in other words, that appellees' judgment as to the value of the trucks is limited to the excess of the value of the trucks, over and above appellant's interests therein, and is further limited to the amount of appellees' equity in the trucks. Appellant cites *Geissendorff et ux.* v. *Eagles et al.* (1880), 70 Ind. 418, in support of said contention.

Said case is not authority for holding that appellees' judgment as to the value of the trucks is limited to the excess of the market value of the trucks over and above appellant's interest therein. In that case the Supreme Court did hold that the amount of replevors' judgment as to the value of the goods replevied should be ascertained by deducting the amount of prior liens from the market value of the goods replevied, but that method of determining the "value" of the property is not applicable here, because, as has been held, in the Grusin

case, *supra,* appellant's interest in the property is not a prior lien, as against appellees' equity but is inferior to it.

*Geissendorff et ux.* v. *Eagles et al., supra,* is authority for holding that appellees' judgment as to the value of the trucks is limited to the amount of his equity therein, but the evidence clearly shows that appellee had performed labor and furnished materials in the repair of the trucks of the total value of $608.70. That was evidence of appellees' equity in the trucks. That evidence certainly sustains a judgment in the amount of $604.70 as the "value" of the trucks, as against a contention that the amount of the judgment as to such value, is excessive. (See Sec. 624, Burns 1926, §2-2510, Burns 1933, §382, Baldwin's 1934, which provides that in an action for replevin judgment may be for the "value" of the property.)

No contention was made by appellant that the repairs made by appellee Mullen were unnecessary, nor that they did not add to the value of the busses, and therefore we have not discussed said questions.

We have read the evidence and find there is sufficient evidence in the record to sustain the decision that appellee Mullen is entitled to the immediate possession of the property, and the decision as to the value thereof, but there is no evidence in the record which sustains the decision that appellee Mullen has been damaged in any amount by the detention of the property. Appellant contends the judgment should be reversed for that reason.

On account of the lack of evidence to support the decision of the court as to damages for detention of the property, appellee is ordered to remit the sum of $56.30 within thirty days after the rendition of this opinion and judgment. Upon the filing with the clerk of this court a remittitur in the sum of $56.30 by the appellee

within said period of time, the judgment is affirmed, otherwise the judgment is reversed.

## CONCURRING OPINION.

KIME, J.—I concur in the above opinion solely because it follows the law as announced in the Grusin case and this court must follow what the Supreme Court says the law is. However, I think the law, as announced by the Supreme Court, in the Grusin case, is absolutely wrong and believe that the Supreme Court should, before the present term expires, recall their opinion therein and revise it, which right to recall and revise that opinion ceases with the expiration of this term.

The present day system of modern financing, which has progressed upon the interpretation of the law throughout many years, will be totally destroyed if the Grusin case is allowed to stand. Under the law, as announced in the Grusin case, finance companies and others financing the purchase of automobiles can not protect themselves in any way, therefore, the whole structure will crumble. There is no necessity for thus extinguishing this adjunct to modern business.

In Indiana today it is possible for the mechanic to determine, with very little effort, the positive ownership of an automobile. If the repair job is not worth this effort it is not worth considering by the mechanic. It may be that the purchasing of automobiles should be put on a cash basis, which will be the only result possible under the Grusin opinion, but I believe that those who would finance purchases of this kind should be protected as they have been in the past, by a long line of judicial precedent, so that the industry will not be forced, by judicial opinion, on to a cash basis.