BUANNO *v.* WEINRAUB ET AL.

[No. 28,371. Filed October 18, 1948. Rehearing denied November 17, 1948.]

558

*Fay W. Leas* and *Noble F. Schlatter*, both of Fort Wayne, attorneys for appellant.

*Sol Rothberg*, of Fort Wayne, attorney for appellees.

EMMERT, J.—This is an appeal from a judgment of the trial court enjoining the appellant from engaging in the window cleaning or janitor service in Allen County, either directly or indirectly, on his own behalf, or from being employed by another party engaged in the same business, and from soliciting such service on his own behalf or on behalf of another party in the window cleaning or janitor service business in said county, for a period of three years from the termination of a written contract providing for additional services of employment. The appeal is transferred from the Appellate Court to this court under § 4-209, Burns' 1946 Replacement.

For several years prior to August 1, 1943, the appellant had been employed under an oral agreement

by the appellees, who were partners engaged in the window cleaning and janitor service business in the City of Fort Wayne, Indiana, and before that time he had been employed for many years by the father of appellees who operated the same business. The appellees, Irvin Weinraub and Leonard Weinraub, were entering the armed forces for service in World War II, and in order to keep the business operating while they were away, submitted to appellant a written contract which was supplemental to the oral agreement of employment. The specific provisions of the written contract which are material to the controversy follow:

"WHEREAS, the party of the second part has been an employee of the party of the first part for many years, and as such employee has been engaged in the window cleaning and janitor service, and,

"WHEREAS said party of the second part has been receiving as compensation for his services to the first party the sum of $45.76 per week, and in addition to said amount has been receiving additional compensation for overtime, and,

"WHEREAS it is the desire of the parties hereto to give to said second party additional responsibility, which responsibility consists of supervision of all of the employees engaged in said business, other than those engaged in the office, and will consist of the hiring and discharging of the men, obtaining additional work, fixing prices on new jobs, assigning the work to the men, routing the daily work and generally supervising the men in their duties so that the work is carried on economically and efficiently.

"IT IS THEREFORE COVENANTED AND AGREED by and between the parties that in consideration for the services to be rendered by the said second party as hereinbefore set out, said first party will pay to said second party, in addition to his regular salary, a sum equal to two per cent of the gross business engaged in by the first

party during each year during the term of this agreement, provided, however, that if the gross business of said first party exceeds $42,000 during any current year while this contract is in force, said second party will receive an additional ten per cent on all gross business in excess of $42,000, it must appear by the books of the first party that the payment of said bonus will not create a loss and can only be paid out of net profits.

". . .

"It is further understood and agreed by and between the parties that in the event either of the parties to this contract are not satisfied with the terms thereof or either of the parties, because of any reason, desires to cancel their contractual relationship, the party desiring to cancel the same may do so by giving to the other party sixty days' notice in writing advising that the contract is to be cancelled. At the termination of said sixty days, the contract will automatically terminate and neither party will be liable to the other party in any manner for the cancellation of said contract. It is to be understood, however, that at the time of the cancellation of said contract, the second party will be entitled to receive his percentage of business done, as hereinbefore provided, which percentage shall be paid for the period of time up to and including the date of the cancellation of the contract.

"It is further understood and agreed by and between the parties that in the event said party of the second part should leave the employ of the party of the first part then the second party will not engage in the window cleaning or janitor service in Allen County for a period of three years; that he will not so engage, either directly or indirectly, on his own behalf or will not permit himself to be employed by another party engaged in the same business for said period of time, and that he will not solicit on his own behalf, or on behalf of any other party, any window cleaning or janitor service business during said period of three years.

". . ."

Appellant had a copy of the contract in his possession for more than a month before it was executed on August 1, 1943.

After the return of Leonard Weinraub from the armed forces, a sixty days' written notice of termination of the written contract was sent to the appellant. After the expiration of the sixty days' notice, the appellant formed a corporation known as the City Building Cleaners, Inc., in which he, his wife and two others were officers and stockholders, and he began advertising and competing with the appellees in the window cleaning business in Fort Wayne, doing work for twenty-eight former customers of the appellees. There were also five other firms in Fort Wayne doing window cleaning and janitor service.

After the appellant entered into the written contract he learned of new customers and became acquainted with the purchasing agents of the customers with whom the appellees did business. Appellant knew nothing about the pricing of jobs prior to the contract. Appellant asserted he never knew a trade or business, but admitted that he had built an apartment house which he personally remodeled, and that he did work other than window cleaning work at the Dudlow Manufacturing Co. in Fort Wayne.

The evidence revealed that appellant was receiving $1.10 per hour under an unwritten contract, which was later changed to fifty cents on every dollar that was received by the partnership, which was paid under the oral agreement of employment, and was in addition to what appellant received under the written contract. Prior to the execution of the written contract appellant earned approximately $2,000 per year, but during the first year of the written contract he earned $4,681.42, and during the second full year he received $6,928.05.

The evidence was conflicting as to whether the appellant had been discharged under both the oral agreement of employment and the written contract, but the evidence viewed most favorably to appellees shows that appellant was not discharged as an employee, but that he quit the service of the appellees.

It is clear that there was a valid consideration for the negative covenants, for "a promise to employ will support a promise to work and to refrain from engaging in the competing business." I Williston on Contracts (Rev. Ed.) 486, § 138A. Although the contract was drafted by the attorney for the appellees, and so in case of doubt should be construed in favor of the appellant, that fact "will not authorize a court to make a contract for the parties, nor to disregard one made by the parties themselves. *Havens* v. *Home Ins. Co.*, 111 Ind. 90; *Phenix Ins. Co.* v. *Lamar*, 106 Ind. 513 (55 Am. Rep. 764) ; *McGowan* v. *People's M. F. Ins. Co.*, 54 Vt. 211; *Supple* v. *Iowa St. Ins. Co.*, 58 Iowa 29." *The Continental Insurance Company* v. *Vanlue* (1890), 126 Ind. 410, 415, 26 N. E. 119. The negative covenant is clear and specific, and it is the duty of the courts to see that it is enforced according to its terms in the absence of any valid defense thereto.

In *Grand Union Tea Company* v. *Walker* (1935), 208 Ind. 245, 255, 195 N. E. 277, 98 A. L. R. 958, this court in construing a negative covenant very similar to the one involved in this appeal, said:

"We find from an exhaustive reading of many of the cases cited in 67 A. L. R. 933, *supra*, and other cases that there is a general holding, in all modern judicial decisions, upon the question involved, that contracts between employer and em-

ployee in restraint of employment, where the restraint is reasonably necessary for the protection of the employer's business, and not unreasonably restrictive upon the rights of the employee and not against public policy, are valid."

. The negative covenant was supported by a binding consideration, and was ancillary, not only to the provisions of the written contract whereby the appellant assumed the duties of management and so became acquainted with the persons buying the service, but it was also ancillary and supplemental to the oral agreement of employment under which the appellant had been working, and under which he continued to work during the life of the written contract. The negative covenant extended to both contracts.

There was no public policy which prohibited the appellees, when about to enter the armed forces, from seeking to keep their business in operation during their absence, and from prohibiting anyone they might leave in charge of part of its operation, from acquiring their customers to their detriment. It did not create any monopoly, for there were at least five other firms engaged in similar business in Fort Wayne. The restricted territory was not indefinite or too large an area. This court has held restriction of an area to eleven miles was not unreasonable. *Eisel et al.* v. *Hayes* (1895), 141 Ind. 41, 40 N. E. 119. In *Beatty* v. *Coble* (1895), 142 Ind. 329, 41 N. E. 590, it was held a restrictive covenant encompassing an entire county was good. In *Grand Union Tea Company* v. *Walker* (1935), 208 Ind. 245, 195 N. E. 277, 98 A. L. R. 958, a negative covenant was good which prohibited an employment "in any of the territories or delivery routes which shall have been assigned or entrusted to him or placed in his charge or under his

direction by the Company, either as Head Salesman or in any other capacity; . . ." Although this exceeded the territory of the county, the area restricted was held reasonable. The three year period of the contract was a reasonable period of time during which the restriction should continue. *Trentman* v. *Wahrenburg* (1903), 30 Ind. App. 304, 65 N. E. 1057; 13 C. J. 473, § 417 note 66; 17 C. J. S. 627, § 245.

The appellant contends that the facts in the decision of *Jenkins* v. *King* (1946), 224 Ind. 164, 65 N. E. 2d 121, require a reversal of this case. In our opinion the facts are so materially different that the Jenkins case does not control the decision in this case. In the Jenkins case the contract was for a certain specific time, from January 1, 1940 to January 1, 1942, and the contract was not supplemental to a prior existing oral contract of employment. In this appeal the negative covenant was for the benefit of both the oral agreement of employment and the written contract for additional responsibilities and compensation. The oral contract of employment, indefinite as to duration, was not cancelled by any act of the appellees, but extended until the appellant of his own volition terminated it by quitting the employment of the appellees.

Judgment affirmed.

NOTE.—Reported in 81 N. E. 2d 600.