CHAMPA D/B/A WATKIN'S GARAGE *v*. CONSOLIDATED FINANCE CORPORATION ET AL.

[No. 29,011. Filed January 30, 1953.]

582

*Anthony Champa,* of Indianapolis, for appellant.

*Ruckelshaus, Reilly, Rhetts & O'Connor,* of Indianapolis, for appellees.

DRAPER, J.—This is an action in replevin, brought by the appellee finance company, to obtain possession of a certain DeSoto automobile in the possession of appellant, complaining that the appellant unlawfully detained the same from said appellee, the conditional vendor's assignee.

Appellant filed answer under the rules, and also filed a cross-complaint against the appellee and one Barnett, conditional vendee of the vehicle, which alleged that the appellant held the automobile for a mechanic's and repairman's bill and storage lien ordered and authorized by the lawful owner, and praying a judgment for the amount of his bill and that the lien be foreclosed and the automobile ordered sold to satisfy the lien.

The trial court found for the appellee finance company, awarding nominal damages and possession of the vehicle.

The court made no finding on appellant's cross-complaint. The Appellate Court nevertheless reviewed the case (98 N. E. 2d 925) pursuant to the provisions of Rule 2-3.

The appellant assigns as error the overruling of his motion for new trial, which specifies that (1) the decision and finding of the court is not sustained by sufficient evidence, and (2) the decision and finding of the court is contrary to law.

The evidence shows that on January 7, 1949, Otis Barnett purchased a 1941 DeSoto sedan from an Indianapolis automobile dealer, paying part cash and entering into a conditional sale contract with the seller for the balance. The conditional sale contract, which was immediately assigned by the seller to the appellee finance company, provides that the title to said motor vehicle shall remain in said seller or his assignee until the contract is fully performed, and that the vendee shall not attempt to sell or encumber said vehicle during the life of the contract. The contract is silent as to the making of repairs on the automobile or as to the maintenance of said vehicle in good operating condition.

On January 11, 1949, Barnett's application for title and his newly issued certificate of title both contained the conditional lien of the appellee finance company. The certificate of title was mailed to and retained by the company. Barnett used the car for pleasure purposes only.

In September, 1949, the automobile was taken to appellant's garage and the repairs were ordered by Barnett. This was done without the knowledge or au-

thorization of appellee finance company. The cost of the repairs was higher than Barnett could pay and he notified the finance company that the car was held at the appellant's garage for the repair bill, that he was defaulting on the contract and releasing all interest in the vehicle. Barnett did not advise the appellant of the existence of any lien on said vehicle when he ordered the repairs. The appellant did not ask him concerning that. The appellant made no attempt to ascertain whether such a lien existed.

At the time Barnett took the automobile to appellant's garage he still owed the finance company more than $400 on the conditional sale contract. The repairs were extensive. Among other things the appellant tore down the engine and replaced the crank shaft. The repair bill was $206.33. On December 31, 1949, four months after the car was repaired, it was sold at public auction for $175.

The question presented is whether the appellee finance company was entitled to possession of the automobile by virtue of the fact that it held the conditional sale contract thereon, or whether the appellant, who was claiming possession by virtue of an unpaid repairman's and mechanic's lien on the automobile, was entitled to retain possession thereof.

There is no claim that the appellant relied upon or in any way undertook to secure or enforce a lien according to the provisions of Acts 1927, ch. 189, being Burns' Stat., §43-801 et seq. He relies for reversal upon the proposition that Barnett, the conditional vendee, was the "owner" of the car, and the appellant therefore had a mechanic's lien thereon because of the provisions of Acts 1925, ch. 213, §56, being Burns' Stat., §47-552. That section provides in part that a mechanic who does repair work on an au-

tomobile at the request of the *owner* thereof is given a lien on the vehicle to the reasonable value of the charges for such labor, materials, storage or repairs, and if the charges are not paid within thirty days after the vehicle is left for repairs, the mechanic may advertise and sell the vehicle to the highest bidder for cash, deduct his charges and advertising costs and pay the overplus to the owner. That act provides in §1 thereof, that " 'Owner' shall be construed to also include any person, firm, association or corporation renting or leasing a motor vehicle and having exclusive use thereof for a period longer than thirty (30) days."[1]

To establish his status as the "owner" of the vehicle under §47-552 the appellant relies on Acts 1939, ch. 48, §11, being Burns' 1952 Repl., §47-1811(d), which defines the "owner" of a motor vehicle as follows:

"Owner. A person who holds the legal title of a vehicle, or in the event a vehicle is the subject of an agreement for the conditional sale or lease thereof with the right of purchase upon performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, or in the event a mortgagor of a vehicle is entitled to possession, then such conditional vendee or lessee or mortgagor shall be deemed the owner *for the purpose of this act*." (Emphasis supplied.)

But that definition of "owner" is laid down for the express purpose of the 1939 Act, which act, as expressed in the title, is for the purpose of regulating traffic on highways, defining certain crimes in the use and operation of vehicles, and other related subjects.

---

[1] No question concerning the constitutionality of this statute has been presented or considered.

It has nothing to do with the 1925 Act concerning the lien of a mechanic for repairs to motor vehicles.

The definition of "owner" found in Acts 1945, ch. 304, §2(o), being Burns' Stat., §47-2402(o), is much like the definition of owner as found in §47-1811(d) above referred to. It too is a definition of "owner" which has been furnished for the sole purpose of the Act of which it is a part, which Act creates a bureau of motor vehicles, and provides for the registration and licensing of vehicles and the operators thereof. No mention of liens of mechanics is made in either the title or body of the 1945 Act.

In construing statutes, words and phrases are given their plain, ordinary and usual meaning unless a different purpose is clearly manifest by the statute itself. *R. L. Shirmeyer, Inc.* v. *Ind. Revenue Bd.* (1951), 229 Ind. 586, 99 N. E. 2d 847. The word "owner" does not ordinarily include a conditional vendee. If it did, it would have been unnecessary for the legislature to define a conditional vendee as an "owner" in the enactments above mentioned. Recognition of the fact that a conditional vendee is not an "owner" is found in §2 of the Uniform Conditional Sales Act, Burns' Stat., §58-802, which provides that the buyer "shall . . . have the right to acquire the property in the goods on the performance of the conditions of the contract." We hold that Barnett, the conditional vendee, was not the "owner" of the automobile within the meaning of Acts 1925, ch. 213, §56, being Burns' Stat., §47-552. See *Hartford Accident & Indemnity Co.* v. *Spofford* (1927), 126 Maine 392, 138 Atl. 769; *General Motors Acceptance Corporation* v. *Sutherland* (1932), 122 Nebr. 720, 241 N. W. 281; *Cache Auto Co.* v. *Central Garage* (1923), 63 Utah 10, 221 Pac. 862, 30 A. L. R. 1217. In *Sundin* v. *Swanson* (1929), 177 Minn.

217, 225 N. W. 15, relied on by appellant, the statute extended a lien right to those furnishing services at the request of the owner *or legal possessor* of any personal property. Similar provisions are found in the statutes of several states. It must be presumed that, had our legislature intended that others than owners should come within the protection of §47-552, supra, it would have said so.

As above stated, the appellee finance company had no actual knowledge or notice of the making of the repairs. It did not expressly authorize or consent to the making of them. The appellant insists that his right to the satisfaction of his claim is superior to the rights of the appellee as conditional vendor, on the theory that the appellee impliedly consented to the making of the repairs.

As a general rule, the rights of an artisan making repairs to a chattel at the instance of the conditional vendee are subordinate to those of a conditional vendor. *Partlow, etc., Car Co.* v. *Stratton* (1919), 71 Ind. App. 122, 124 N. E. 470; *General Motors Acceptance Corporation* v. *Sutherland, supra;* Restatement "Security", §76. But in some jurisdictions, including this one, it has been recognized, usually in chattel mortgage cases, that the rights of the artisan may be superior to those of the mortgagee where the mortgagor has impliedly consented to the making of the repairs. *Personal Finance Company* v. *Flecknoe* (1940), 216 Ind. 330, 24 N. E. 2d 694, and cases cited. Both parties to this appeal assert that the logic of the chattel mortgage cases applies equally to conditional sale transactions so far as the element of implied consent is concerned, and it has been so held. *Partlow, etc., Car Co.* v. *Stratton, supra; Hartford Accident & Indemnity Co.* v. *Spofford, supra.*

In *Personal Finance Company* v. *Flecknoe, supra,* the authorities were reviewed and the following was evolved as the applicable rule of law in this jurisdiction:

"The majority of the courts have granted priority to the mechanic as against the mortgagee only in those cases (1) where the repairs would constitute a real benefit to the mortgagee by preserving the chattel covered by the mortgage, (2) where the mortgagee had a beneficial interest in the continued use of the mortgaged chattel and the repairs were necessary to such continued use, or (3) where the mortgagee had actual knowledge of the repairs being made or there were circumstances, or language in the mortgage, from which such knowledge could be presumed. An artisan claiming priority for his lien must bring his case within one of these classes. The burden is upon him to show facts from which the consent of the mortgagee may properly be implied." p. 338, 339 of 216 Ind.

The chattel mortgage in that case was silent upon the subject of any repairs being made on the automobile, as was the conditional sale agreement in this case. The 1931 automobile involved in that case was "badly in need of repairs" and "could no longer be operated or driven about as an automobile." The repair bill was $67.76. It was not paid. The mechanic retained possession of the car and the mortgagee filed suit to replevy it.

After announcing the rule above quoted, the court said:

"In the instant case the evidence fails to show such a benefit to the mortgagee as to justify the court in presuming its consent to the making of the repairs and to the subordination of the mortgage lien. There is no showing that the repairs were necessary to preserve the automobile for the

mortgagee. The evidence did show that the repairs were necessary to the continued use of the automobile but there was no attempt to show that the continued use of the automobile would earn funds with which to pay the mortgage debt or would in any other manner benefit the mortgagee.

"The mere fact that it might be inferred that the repairs in question added some value to the automobile is not sufficient. If this were enough a mechanic might paint the automobile and add all new tires. This would undoubtedly increase the value of the automobile but the cost of such repairs made in 1937 on a 1931 automobile might well amount to more than the total value of the automobile after such repairs were made. To imply the consent of a mortgagee to the making of repairs which might cause him to have no margin of value left for his security would be beyond reason. The repairs must be reasonably necessary for the preservation of the automobile or necessary to a continued use in which the mortgagee has an interest.

"There is no contention in this case that the mortgagee had actual knowledge of the making of the repairs, nor is there any provision in the mortgage requiring repairs to be made by the mortgagor. It is contended by the appellee that since the automobile was left in the possession of the mortgagor it must be assumed that it would be used by him and that, therefore, his consent to the making of such repairs as were necessary to keep it useful must be assumed. With this contention we can not agree. To imply the consent of the mortgagee we must have a state of facts where we might assume that if the mortgagee knew all of such facts he would give his consent. It would be a violent assumption to assume that the mortgagee would consent to the making of repairs which might endanger his security when such repairs were only for the purpose of continuing a use in which he, as mortgagee, was not interested. Nor do the facts of this case require us to grant the mechanic priority for his lien on any ground of commercial convenience or necessity."

We have quoted so extensively from the Flecknoe case because we feel that the language there used is peculiarly applicable to this case and that the application of that language to the facts of this case is decisive. It is apparent that the appellant has not brought his case within one of the classes outlined in the rule laid down in the Flecknoe case, and that the appellee can not be held to have impliedly consented to the making of the repairs.

There is one important difference, however, between the Flecknoe case and the case at bar. That case had to do with a chattel mortgage under a statute which fixed priorities, and the chattel mortgage in that case had been duly recorded prior to the making of the repairs. This case involves a conditional sale contract which was not recorded. Therefore, the constructive notice afforded by the recording of the mortgage in that case is absent here.

In adopting the Uniform Conditional Sales Act, the legislature of this state omitted that part of the Uniform Law which provides for the filing of conditional sale contracts. Compare Burns' Stat., §58-801 to 829 with §5 of the Uniform Act as set out in 2 U. L. A. at p. 6. At common law, and in the absence of statute requiring it, the filing or recording of a conditional sale contract is not essential to its validity against third persons, and it is generally held that statutes which provide for the filing and recording of chattel mortgages, deeds of trust, and bills of sale do not require the filing or recording of conditional sale contracts. 78 C. J. S., Sales, §577, p. 300, and authorities cited.

But there are statutory provisions in Indiana which pertain especially to security interests in automobiles.

Acts 1945, ch. 304, §11, being Burns Stat., §47-2501, provides for the issuance of a certificate of title upon application which shall contain a statement of any liens or encumbrances thereon. "The certificate of title shall be delivered to the owner (as defined in §47-2402(o)) in the event no lien or encumbrance appears thereon. Otherwise the certificate of title shall be delivered to the person named to receive the same in the application for such certificate." Sec. 15 of the Act, being Burns' Stat., §47-2505, makes it unlawful for one having possession of a certificate of title by reason of having a lien or encumbrance thereon, to refuse to deliver such certificate to the owner upon the satisfaction or discharge of the lien or encumbrance.

It has been said this law was enacted for the protection of the owner of motor vehicles, of those holding liens thereon, and of the public. *Guaranty Discount Corp.* v. *Bowers* (1932), 94 Ind. App. 373, 158 N. E. 231; *Nichols* v. *Bogda Motors* (1948), 118 Ind. App. 156, 77 N. E. 2d 905. There can be no doubt that the above quoted provisions were intended to furnish a method whereby artisans, as well as owners, conditional vendors, mortgagees, prospective purchasers, and perhaps others could be protected in transactions involving motor vehicles. "Such certificates do not *convey* title and they are not conclusive proof of title in him who is therein designated as the owner. *Meskiman* v. *Adams* (1925), 83 Ind. App. 447, 149 N. E. 93. They are, however, evidence of title upon which purchasers and others interested have come to put great reliance." *Nichols* v. *Bogda Motors, supra.*

It is common knowledge that bankers and finance companies generally retain possession of the certificate

of title upon which their interest in the vehicle is shown.[2] They do so, of course, to avail themselves of the protection afforded them by the terms of the statute.[3] Implicit in this legislation is the idea that when one in possession of an automobile is unable to exhibit a certificate of title therefor, artisans and others are put upon notice that the possessor of the vehicle may have no title thereto, or that his title may be subject to the prior rights and interests of others.[4]

In this case Barnett did not have the certificate of title in his possession. He did not claim to have it. He was not asked whether he had it nor was he asked to produce it. The appellant made no effort to ascertain whether a lien existed. The appellee did everything it could do to protect itself and others. Availing itself of the law, it retained the certificate of title upon which its interest had been noted. If the appellee had not protected itself here, we know of no practical way under our

---

[2] See 25 Ind. Law Journal, pp. 337, 339.

[3] In *Associates Investment Co.* v. *Shelton* (1952), 122 Ind. App. 384, 105 N. E. 2d 354, the court said that a finance company, by failing to have its lien shown on the certificate of title, *which would have safeguarded its interests,* is estopped from asserting ownership and legal title against innocent purchasers.

In *Central Finance Co.* v. *Garber* (1951), 121 Ind. App. 27, 97 N. E. 2d 503, the certificate of title, bearing the assignment to the purchaser and showing appellant's lien thereon was delivered to the purchaser of the vehicle. By erasing the lien and making a false affidavit the purchaser obtained a new certificate of title issued in his name which showed no lien. The purchaser sold to an innocent third party for value. Held that the appellant, having protected himself as best he could under the law, would prevail as against the innocent third party.

[4] See exhaustive discussion of the problem at hand in Vol. 16 Law and Contemporary Problems, p. 197.

law by which it could do so.[5] The appellant failed to take the simple precaution of determining, at no inconvenience or expense to himself, whether he could safely invest time and materials in the automobile. We must hold that the appellant was chargeable with notice of the prior rights of the appellee finance company.

Even if it could be considered that the appellant is an innocent party despite his lack of care, we think the rule should prevail, as it has prevailed in the past in these cases, that where one of two innocent parties must suffer a loss, it must be borne by him whose act or omission made the loss possible. *Nichols* v. *Bogda Motors, supra; Guaranty Discount Corp.* v. *Bowers, supra; LaPorte Discount Corp.* v. *Bessinger* (1930), 91 Ind. App. 635, 171 N. E. 323; *Universal C. I. T. Credit Corporation* v. *Walters* (1949), 230 N. C. 443, 53 S. E. 2d 520. Or, as better stated to fit the circumstances of this case: "(W)here one of two innocent persons must suffer a loss, it should fall on him who, by reasonable diligence or care, could have protected himself, rather than on him who could not." *Nat. Savings Bank* v. *Creswell* (1880), 100 U. S. 630, 25 L. Ed. 713.

We conclude that the rights of the appellant, under the issues joined and evidence presented, must be held inferior to those of the appellee, and that the judgment must be affirmed.

---

[5] The annual volume of sales of these contracts to bankers, finance companies and others in Indiana approximates $100,000,-000. See *Department of Financial Institutions* v. *Holt* (1952), 231 Ind. 293, 108 N. E. 2d 629.

## CONCURRING OPINION

EMMERT, C. J.—The petition to transfer alleges but one cause, to-wit: that the opinion of the Appellate Court contravenes the ruling precedent announced by this court in *Personal Finance Co.* v. *Flecknoe* (1940), 216 Ind. 330, 24 N. E. 2d 694. The Flecknoe case involved the priority of the lien of a chattel mortgage, which had been duly recorded, over a garageman's common law lien for repairing the automobile covered by the mortgage, whereas in the appeal at bar the controversy arises between the assignee of a conditional seller and a garageman, who at the request of the conditional buyer, furnished necessary labor and material to keep a nine-year-old DeSoto automobile in operation. The Flecknoe case decided that the lien of a chattel mortgage, duly recorded, was superior to the lien of a mechanic for repairs on the car, and under the facts it could not have decided priorities arising under an unrecorded conditional sale. Therefore the petition to transfer was insufficient to entitle the appellee to the transfer.

However, since a majority of this court have transferred the appeal, we then have jurisdiction to determine it on grounds other than specified in the petition to transfer. We are entitled to base our opinion on the briefs without resort to the record. Appellees' brief asserts, and it is not denied in appellant's brief, that there was no evidence of the reasonable value of materials and labor required to repair the car. The conditional buyer, Otis Barnett, took the car to appellant's garage and requested the repairs, but no contract was made for any definite price. In such cases the law implies a promise to pay the reasonable value of services. *Louisville, New Albany & Chicago Ry. Co.* v. *Hubbard* (1888), 116 Ind. 193, 195, 18 N. E. 611. Even if there

had been a specific agreement as to the amount of compensation, the conditional seller's assignee, if it had consented to the work being done, could only have had its interest made liable for the reasonable amount. *Mann* v. *Schnarr* (1950), 228 Ind. 654, 95 N. E. 2d 138. Proof of the price charged is not proof of the reasonable value of services performed. *Johnson* v. *Jones* (1916), 62 Ind. App. 4, 6, 112 N. E. 830. Since there was a total failure of proof on the issue of the reasonable value of materials and labor furnished, the judgment of the trial court should be affirmed on this ground.

On January 11, 1949, the conditional buyer purchased the nine-year-old DeSoto automobile in controversy from an Indianapolis dealer. The agreed price for the DeSoto was $1,140.00. The contract recited a trade-in price of a Ford at $310.00, and cash in the sum of $100.00, leaving an unpaid cash balance of $730.00, to which was added a finance charge and insurance costs in the sum of $232.10, leaving a time balance in the sum of $962.10 to be paid in fifteen monthly installments of $64.14 beginning on February 15, 1949. The buyer promised not to sell or encumber said motor vehicle. The contract was silent as to the making of repairs, and there was no promise or condition that the buyer would not use the car until the purchase price was paid in full. It was on a printed form, with various assignment forms on the back thereof, for assignment to Consolidated Finance Corporation to whom the dealer assigned it without recourse. The only possible inference is the form of the contract was drafted by Consolidated Finance Corporation. The contract, having been prepared by this appellee, should be construed most strongly against it if there is doubt as to the meaning of any provision.

*Jenkins* v. *King* (1946), 224 Ind. 164, 65 N. E. 2d 121, 163 A. L. R. 397; *Buanno* v. *Weinraub* (1948), 226 Ind. 557, 81 N. E. 2d 600; *Noblesville Milling Co.* v. *Johnson* (1946), 116 Ind. App. 437, 65 N. E. 2d 250; 13 C. J. 545.

Under the common law if a mortgagee of a chattel mortgage permitted the mortgagor to retain possession of the chattels, the transaction was held fraudulent as to the mortgagor's creditors. *Jordan* v. *Turner* (1833), 3 Blackf. 309, 10 Cornell L. Qr. p. 339 In order to permit the mortgagor to retain the possession of the chattels, and at the same time to protect the mortgagor's creditors, the recording acts, when complied with, give notice of the lien to everyone. Section 2 of the Chattel Mortgage Act of 1935, §51-502, Burns' 1951 Replacement, provides in part that the mortgage "shall be a good and valid lien against, and superior to all rights of any and all unsecured creditors of the mortgagor, and any and all subsequent purchasers, mortgagees, *lienors* and encumbrancers, including judgment creditors, of the mortgagor, and any and all third persons." (Italics supplied.) Section 4 of the Act, §51-504, Burns' 1951 Replacement, gives the recorded mortgage priority, and further provides that a chattel mortgage, not duly filed for record, "shall be invalid and ineffectual as against all subsequent mortgagees, purchasers and/or creditors of the mortgagor, without actual notice thereof." Section 10 of the Act, §51-510, Burns' 1951 Replacement, provides that "upon filing such instruments in the office of the county recorder, all persons shall thereby be charged with notice thereof and of the rights of the mortgagee, trustee, his or its assignee or representative thereunder." In contemplation of law the garageman in the Flecknoe case had notice of the chattel mortgage.

There is no provision in the Conditional Sales Act of Indiana, §§58-801 to 58-829, Burns' 1951 Replacement, which give the appellant Champa any constructive notice of the title asserted by the appellee. Nor do the certificate of title provisions of the Motor Vehicle Act, §47-2501, Burns' 1952 Replacement, provide any constructive notice to any garageman. If the General Assembly had intended to give constructive notice to the garageman, it would have so stated as in the case of a recorded chattel mortgage. Or third persons dealing with the apparent owner of the vehicle could have been amply protected by a provision in the certificate of registration statute, §§47-2602, 2603, 2604, 2605, Burns' 1952 Replacement, which could have required that the security title of the seller be noted on the certificate of registration card, which under the statute is required to be carried in the vehicle or on the person driving or in control of such vehicle.

The evident purpose of the certificate of title statutes enacted from time to time was not to give additional protection to an unrecorded conditional seller or a recorded chattel mortgagee. The property interests of each were adequately protected against fraudulent acts or assignments by the owner or mortgagor. Our Legislature sought to protect the buyers of automobiles by providing them a better title with notice of any defects in the seller's title. Before the certificate of title requirements, there were wholesale thefts of cars, and no one could be positive he was not buying a stolen automobile. The certificate of title acts made it more difficult to dispose of stolen automobiles in the state, and greatly increased the risk of conviction for the guilty. There is nothing in the title provisions that indicates an intention that the garageman's lien should

be subordinate to the interest of either a conditional seller or a mortgagee.

The economic as well as the legal justification for the widespread use of conditional sales contracts to market used automobiles is that it permits the buyer to use the car while he is paying for it. If the buyer had the money to pay the cash for the car, it would be no violent presumption to presume he would do so and save the finance charge, which in this case was $232.10. No buyer of a used car by a conditional sales contract buys the car to put in his garage and never use it until he pays the contract in full. Consolidated had no provision in its contract prohibiting the use of the car. If Consolidated had desired to protect itself against the ordinary wear and use of this nine-year-old automobile, it could have provided the car was not to be used, but we could hardly assume that such a contract would have helped to sell any used automobiles. When we apply the well settled rule that doubtful provisions in the contract will be construed against the party who drafted it, it must have been within the contemplation of the parties that this nine-year-old car was going to be used by the buyer, and that Consolidated assented to that use.

It is common experience that any automobile in use is going to require repairs, and the older the car the more likely repairs will become necessary in order to keep it in operation. Even in the case of a chattel covered by a recorded mortgage, this court has held that it is proper to infer that the mortgagee assented to the repairs. *Watts* v. *Sweeney* (1891), 127 Ind. 116, 26 N. E. 680, 22 Am. St. 615; *Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 296, 187 N. E. 382; *Personal Finance Co.* v. *Flecknoe* (1940), 216 Ind. 330, 24 N. E.

2d 694, *supra*. Assent to the repairs is all that is neces-
sary, for the lien is then created by operation of law.
*Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 296,
300, 187 N. E. 382, *supra; Yellow Mfg. Acceptance
Corp.* v. *Linsky* (1934), 99 Ind. App. 691, 699, 190 N. E.
379, 192 N. E. 715.

As was stated by the court in *Watts* v. *Sweeney*
(1891), 127 Ind. 116, 123, 124, 26 N. E. 680, 22 Am.
St. 615, *supra*, "Where property is to be retained and
used by the mortgagor for a long period of time, it
will be presumed to have been the intention of the
parties to the mortgage, where it is property liable to
such repairs, that it is to be kept in repair, and when
the property is machinery, or property of a character
which renders it necessary to intrust it to a mechanic
or machinist to make such repairs, the mortgagor in
possession will be constituted the agent of the mort-
gagee to procure the repairs to be made, and as such
necessary repairs are for the betterment of the prop-
erty, and add to its value to the gain of the mortgagee,
the common law lien in favor of the mechanic for the
value of the repairs is paramount and superior to the
lien of the mortgagee. The mortgagee is presumed in
such case to have contracted with a knowledge of the
law giving to a mechanic a lien."

"Where the mortgagor is given the right or charged
with the duty of procuring repairs, or where the con-
tract is silent upon the subject and the property is a
vehicle or machinery of such a nature that it is
apparent that the object complete and fit for use, and
not its component or broken parts, is relied upon by the
mortgagee as security, and when it is contemplated that
the property is to be used by the mortgagor, and it is
of such a character that the necessity of repairs may
be reasonably anticipated, necessary repairs which add

to the value of the property are required to preserve the security of the mortgagee and are a benefit to him, and authority for the mortgagor to have such repairs made will be implied from the circumstances. In either case the mortgagor will be constituted the agent of the mortgagee for the purpose of procuring repairs." *Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 296, 301, 187 N. E. 382, *supra*.

In *Personal Finance Co.* v. *Flecknoe* (1940), 216 Ind. 330, 338, 339, 24 N. E. 2d 694, *supra,* the court classified the various cases in which a mechanic's lien might have priority over the interest of a mortgagee as follows: "The majority of the courts have granted priority to the mechanic as against the mortgagee only in those cases (1) where the repairs would constitute a real benefit to the mortgagee by preserving the chattel covered by the mortgage, (2) where the mortgagee had a beneficial interest in the continued use of the mortgaged chattel and the repairs were necessary to such continued use, or (3) where the mortgagee had actual knowledge of the repairs being made or there were circumstances, or language in the mortgage, from which such knowledge could be presumed. An artisan claiming priority for his lien must bring his case within one of these classes. The burden is upon him to show facts from which the consent of the mortgagee may properly be implied." In the next paragraph the court held, "There is no showing that the repairs were necessary to preserve the automobile for the mortgagee." It is difficult to understand how the court arrived at this conclusion in view of the stipulation that "said automobile was then 'badly in need of repairs, and the same could no longer be operated or driven about as an automobile.'" It would seem obvious that when an automobile will not run or operate, and certain repairs

are necessary to put it in condition to operate with reasonable safety, and no more repairs are made than necessary to restore it to this condition, value to the car has been added by the artisan which inures to the benefit of the mortgagee or conditional seller thus increasing his security title to his benefit. The authority of the Flecknoe case should be confined to its specific facts, and should not be extended as a ruling precedent when the rights of the conditional seller or his assignee are involved.

In the appeal at bar the engine knocked, had a rod out, the crankshaft was not true, and it had to be towed to the garage. If the repairs were reasonably necessary to make the car operate, the security of the conditional seller's assignee was enhanced, and I can see no reason in law or equity why a garageman who does nothing more than furnish necessary labor and materials to keep the car in operation, so that it can be used as contemplated by the contract of the parties, should be forced to contribute a windfall to a conditional seller or his assignee, of whom he had no notice, when the seller must have known that any nine-year-old automobile if operated was going to need some repairs.

There is nothing in any of the motor vehicle statutes concerning certificates of title, certificates of registration, or in the conditional sales act which gave constructive notice of the seller's security title. If the seller had wanted to give notice to the world that it had an unpaid debt secured by a lien against the car, it could have sold the car outright and have taken back a chattel mortgage, which when recorded would have put the appellant on notice. In view of the obvious danger to creditors of the buyer when he is permitted to have possession of the chattel sold under an un-

recorded conditional sale contract,[1] the rights of the conditional seller ought not be extended further by permitting his unjust enrichment when the chattel is improved by necessary repairs, done at the expense of an artisan who acted in good faith and without notice, either actual or constructive.

Nor can I agree with the limited construction given the word "owner" in §47-552, Burns' 1952 Replacement, which is §56 of Ch. 213 of the 1925 Acts. This section as well as other sections of other statutes providing for liens is merely declaratory in the common law as to the creation of the lien, but it does provide a procedure for the foreclosure thereof. See *Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 296, 187 N. E. 382, *supra*. The definition of the word "owner" given in §1 of Ch. 213 of the 1925 Acts does not purport to limit the term to the owner of the fee of the car, or a lessee for a period longer than thirty days. Other provisions of the act, §§10084 to 10101, Burns' 1926 R. S., provide for the registration of the car in the name of the owner, and the issuance to him of a certificate of registration and two number plates for each motor vehicle. But Ch. 213 of the 1925 Acts must be construed in *pari materia* with Ch. 265 of the 1921 Acts, which was then in force.

Section 1 of the 1921 Acts, §10110, Burns' 1926 R. S., prohibited the issuance of any certificate of registration until an official certificate of title had been issued upon an application showing the applicant's title

---

[1] "Conditional sales have become so common under modern methods of business and are so deceptive both to purchasers from the buyer and to the buyer's creditors, since the buyer not only has possession of the property but ordinarily is entitled to use it and does use it as if it were his own, that recording acts have been passed in almost all the States." 2 Williston, Sales (Rev. Ed.) §327, p. 276.

and any liens or encumbrances upon the vehicle. Section 1 of this act provided: "The secretary of state shall use reasonable diligence in ascertaining whether or not the facts stated in said application for a certificate of title are true, and, if satisfied that the applicant is the lawful owner of such motor vehicle, or is otherwise entitled to have the same registered in his name, he shall thereupon issue an appropriate certificate, over his signature, and sealed with the seal of his office, procured and used for such purpose."

From the provisions of both acts it is quite clear that the certificate of title, the certificate of registration and the license plates were all to be issued to the same person, whether his title was absolute, conditional or subject to liens or encumbrances, and this person throughout Ch. 213 of the 1925 Acts was referred to as the owner. Hence, it seems clear to me that a conditional buyer is an owner within §56 of the 1925 Acts, which is §47-552, Burns' 1952 Replacement, declaring the common law lien and providing an additional method for its enforcement. Moreover, the car had not left the possession of the appellant, and whether or not the buyer was the absolute owner, the appellant's common law lien was not in any way impaired as long as this possession continued.

Gilkison, J., concurs.

NOTE.—Reported in 110 N. E. 2d 289.