KRIETENSTEIN *v.* ROBINSON

[No. 18,559.   Filed October 25, 1955.   Rehearing denied December 2, 1955.]

*Wilbur F. Dassel,* of Evansville, for appellant.

*George C. Barnett,* of Evansville, and *Warren N. Eggleston,* of Lafayette, for appellee.

CRUMPACKER, J.—Robinson sued Krietenstein for damages resulting from an alleged breach of warranty of title to an automobile sold by Krietenstein to Robinson. There is a judgment for Robinson in the sum of $1,095.00 from which Krietenstein appeals. He complains of the overruling of his motion for a new trial

which sets out 20 specifications of error. In the "Argument" section of his brief, however, he mentions only specifications 12, 13, 18, 19 and 20 which he groups for presentation on the theory, we presume, that they all raise substantially the same question. See Rule 2-17 (e). Specifications 12 and 13 pertain to the admission in evidence of two separate and distinct exhibits to one of which he made no objection whatever and the other, he asserts, was insufficiently identified. Specification 18 charges that the decision of the court is not sustained by sufficient evidence and 19 that said decision is contrary to law. Specification 20 deals with an alleged abuse of the court's discretion in refusing him a new trial on the grounds of newly discovered evidence. With the exception of specifications 18 and 19 we find no common question involved but, while the grouping is contrary to rule, we regard it as of no consequence in view of the fact that in the elaboration of his argument he abandons 12 and 13 and treats 20 separately. We therefore consider that but three questions are presented to us. (1) Is the decision of the trial court sustained by sufficient evidence? (2) Is said decision contrary to law? (3) Did said court err in refusing the appellant a new trial on the grounds of newly discovered evidence? *McGee* v. *State; Radford* v. *State* (1952), 230 Ind. 423, 104 N. E. 2d 726; *Drake* v. *Eggleston* (1953), 123 Ind. App. 306, 108 N. E. 2d 67, 108 N. E. 2d 901.

This controversy involves a Ford "pickup" truck concerning which the evidence most favorable to the appellee establishes the following facts: On December 28, 1949, one Rubin Johns, of Westmoreland, Tennessee, owned said truck and on said day he sold it to one Joseph R. Hyde for $1,245.000. Hyde made a down payment and the parties executed a conditional sales contract to

secure the payment of the balance of the purchase price. By the terms of this contract title to the truck remained in Johns who, upon its execution, gave Hyde a bill of sale for said truck with the amount due on said contract endorsed on the face thereof. Hyde brought the truck into Indiana, applied for its registration to the Commissioner of Motor Vehicles and was issued an Indiana certificate of title thereto. Whether such certificate of title, at the time of issue, disclosed Johns' lien is not shown by the evidence. On January 23, 1950, Hyde sold said truck to the appellant for $750.00 and delivered to him the Indiana certificate of title with an assignment on the back thereof executed in blank. Said certificate of title, at that time, showed no liens or encumbrances of any kind then existing against said truck and on March 2, 1950, the appellant sold it to the appellee for $1,095.00, wrote the appellee's name in the blank assignment executed by Hyde and delivered the certificate of title so assigned to the appellee. Hyde in the meantime defaulted in the payment of his debt to Johns and Johns began a search for Hyde and the truck. He learned that Hyde had sold the truck to the appellant and went to see him in Evansville, Indiana. He showed the appellant his conditional sales contract and asked him if he cared to pay it off. The appellant refused and further refused to disclose to whom the truck had been sold. Johns however located it on the grounds of the International Harvester Company in Evansville where the appellee had parked it while at work. Johns seized the truck without benefit of legal process, took it back to Westmoreland, Tennessee, gave both appellants and appellee notice of such repossession and of his intention to sell the same at a certain time and place to liquidate Hyde's debt to him and he eventually sold it, all in accordance with the applicable Tennessee law.

The appellee filed a claim with his insurance company asserting that said truck had been stolen from him but said claim was not allowed on the grounds that there was no theft involved. The appellant thereupon swore out a warrant for Hyde's arrest and in his affidavit therefor stated under oath that Hyde was guilty of felonious conversion and obtaining money under false pretenses by purporting to sell the truck to him when in fact title thereto was in Johns. He failed to prosecute this action however and briefs of counsel are not clear as to its eventual disposition.

In our opinion this evidence amply justifies the court's decision. It shows a fully performed contract of sale between the parties and with such sale went the appellant's implied warranty as defined by Sec. 58-113, Burns' 1951 Replacement, in the following words:

> "In a contract to sell or a sale, unless a contrary intention appears, there is:
>
> "(1)   An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods, and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass;
>
> "(2)   An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale;
>
> (3)   An implied warranty that the goods shall be free at the time of the sale from any charge or encumbrance in favor of any third person, not declared or known to the buyer before or at the time when the contract or sale is made."

It is true that at the time of this sale the appellant, an innocent purchaser for value, held an Indiana certificate of title to the truck involved showing no liens or infirmities and duly assigned for value by Hyde

whose name appears therein as its owner. However, as was said in *Nichols* v. *Bodga Motors* (1948), 118 Ind. App. 156, 77 N. E. 2d 905: "Such certificates do not convey title and they are not conclusive proof of title in him who is therein designated as the owner." See also *Champa* v. *Consolidated Finance Corp.* (1953), 231 Ind. 580, 110 N. E. 2d 289. The evidence most favorable to the appellee indicates that Hyde at best was never more than a conditional vendee of said truck the title to which, at all times important to this investigation, rested in Johns. It follows therefore that the appellant, despite his Indiana certificate, got no title from Hyde and consequently could pass none to the appellee.

In support of his contention that the decision of the court is contrary to law the appellant urges that the undisputed evidence shows that Johns' repossession of the truck was without court process of any kind and constituted a theft against which his implied warranty of title afforded no protection. While we have no statutory crime in Indiana known as "theft" the word is generic and includes such crimes as embezzlement, larceny, robbery, horse stealing, etc., all of which involve a felonious intent. There are no facts in this case remotely inferring that anything Johns did was done with such intent. Nor do the facts constitute "vehicle taking" which, as defined by our statutes, involves a taking "without the consent of the owner" who, as the evidence indicates, was Johns. Sec. 10-3010 and Sec. 10-3011, Burns' 1942 Replacement.

The appellant further contends, in support of his contention that the decision of the court is contrary to law, that the undisputed evidence shows that he is an innocent party in this transaction and therefore is discharged of his warranty by that principle

of the law which declares that where one of two innocent parties must suffer a loss, it must be borne by him whose act or omission made the loss possible. It is conceivable that principle of the law might serve to throw the loss on Johns in a proper action but we fail to see its applicability to the fact in this case. The appellee did nothing nor did he fail to do anything which, under the loosest construction, could be considered as making said loss possible.

Finally the appellant contends that since the trial and judgment in this case he has uncovered evidence which, had the court heard it, would probably have changed the decision and therefore the court abused its discretion in denying his motion for a new trial. From said motion we gather that the newly discovered evidence consists of records in the office of the Commissioner of Motor Vehicles of Indiana which indicate that the bill of sale for the truck involved, executed in Tennessee by Johns to Hyde, contained no statement that it was subject to a conditional sales contract. This being true the appellant argues that Johns, by his own acts, made it possible for Hyde to sell the truck to him without notice of liens or title infirmities and thereby was estopped from asserting his right to recover it from the appellant or his privies. We find it unnecessary to decide this question. The facts pleaded under oath by the appellant as constituting his newly discovered evidence were contradicted by counter affidavits filed by the appellee and the factual issues thereby joined were submitted to the court for trial, additional evidence was heard and a finding made against the appellant. On this state of the record the decision of the trial court is final and will not be reviewed on appeal in the absence of a clear abuse of discretion which we fail to find. Flanagan, Wiltrout and Hamilton, Indiana Trial

and Appellate Practice, §1812, p. 388; Works' Indiana Practice, Lowe's Revision, Vol. 4, §61.104, p. 92.

Judgment affirmed.

BOWEN, J., dissenting.

## DISSENTING OPINION

BOWEN, J.—I find that I am unable to agree with the majority opinion in this case. In my opinion Rubin Johns, who forceably took possession of the truck in question from the appellee Robinson, under the previous holdings of this court could not have asserted his title in the courts of this state as against such appellee Robinson, and it seems to me the effect of the majority holding in this case is to permit Johns to do indirectly and without process of law that which he could not have done by due process of law within the courts of this state. *Nichols* v. *Bogda Motors* (1948), 118 Ind. App. 156, 77 N. E. 2d 905. The courts of this state in *Champa* v. *Consolidated Finance Corp.* (1953), 231 Ind. 580, 110 N. E. 2d 289, and *Nichols* v. *Bogda Motors, supra,* have called attention to the fact that there are statutory provisions in Indiana which pertain especially to security interests in automobiles, and this court, in *Nichols* v. *Bogda Motors, supra,* in referring to a Michigan decision states:

> "It is also significant that Justice Butzel in his opinion said: 'While an occasional bona fide purchaser must suffer, under the majority rule, we do a greater good in protecting the financing of chattels *where the mortgagee has done everything in his power to protect his security* . . .'"

It would seem by reason of the foregoing decisions that in passing upon a question involving property rights in an automobile that the statutes pertaining to security interests in automobiles must be taken into

account in applying the Uniform Sales Act to such transactions.

In my opinion the lower court erred in refusing the appellant a new trial on the grounds of newly discovered evidence. This evidence of the records in the office of the Commissioner of Motor Vehicles of Indiana when considered in the light of the counter affidavits of appellee and the facts shown by the record, in my opinion would have by necessity produced a different result in the court below. The majority opinion recites that by reason of the counter affidavits and the trial and finding on the matters presented in appellant's motion for a new trial the trial court's decision was final on these issues. However, in my opinion, the counter affidavits do not change nor alter the clear import of the documentary evidence sought to be offered by the appellant showing that Johns failed to take the necessary steps to protect any interest he may have had in this truck, thereby making it possible for Hyde to sell the truck to appellant without notice of liens or title infirmities, and he was therefore estopped from asserting his right to recover it from appellant or his privies. The counter affidavits of the Director of the Bureau of Motor Vehicles establish that his certification of the chain of title to the truck in question contained a recitation that the original of the Tennessee bill of sale revealed no liens or erasures or alterations. Such affidavit further asserts that "certain smudges or smears, the origin of which he is unable to explain or determine, and which may or may not have been the result of erasures or eradications". The documentary evidence sought to be offered by appellant in the light of the counter affidavits in my opinion can only lead to the conclusion that Johns failed to take such steps which would make his lien enforceable

against either the appellant or appellee. The oral testimony of Johns that he made a proper reservation of his lien fades into insignificance and incredulity when viewed in the light of the documentary evidence which appellant sought to have presented in the court below.

The reasoning in *Nichols* v. *Bogda Motors, supra,* and *Champa* v. *Consolidated Finance Corp., supra,* seems to compel the conclusion that Johns' lien was not enforceable as against appellee and therefore appellant should not be held liable to appellee, and Johns should be compelled to pursue his remedy against Hyde, for whom he made it possible to perpetrate a fraud against appellant and appellee.

NOTE.—Reported in 129 N. E. 2d 368.