PERSONAL FINANCE CO. OF HAMMOND, INDIANA, INC. *v.*
FLECKNOE ET AL.

[No. 27,316. Filed January 15, 1940.]

*A. E. Tinkham,* and *J. E. Tinkham,* for appellant.

*John G. Capouch,* for appellees.

SWAIM, J.—This appeal presents for our determination the question of the priority between an artisan's common law lien for repairing an automobile and the lien of a chattel mortgage on said automobile duly executed and recorded prior to the making of such repairs.

The automobile in question was a 1931 LaSalle Victoria coupe. The chattel mortgage was dated May 14, 1937, and recorded May 20, 1937, in the office of the recorder of Lake County, Indiana, the county in which the mortgagor, one Gilford King, resided. The mort-

gage was given to secure the payment of $190.00, payable in fifteen successive monthly installments. It covered not only the automobile but certain household goods.

The mortgage was silent upon the subject of any repairs being made upon said automobile.

All of the evidence was stipulated. It was stipulated that on May 14, 1937, when the mortgage was given, the said Gilford King was the owner of said automobile; that said King defaulted in the payments of said mortgage on August 14, 1937; that said default continued to the date of the trial; that on or about September 24, 1937, said King delivered said automobile to Herbert R. Flecknoe, doing business as the 17th Avenue Garage and Body Shop; that said automobile was then "badly in need of repairs, and that same could no longer be operated or driven about as an automobile"; that said repairs were made and completed on or about September 28, 1937; that the total amount due for repairs to said Flecknoe is the sum of $67.76; that said Flecknoe retained possession of said automobile and that there is due him for storage for the same the sum of $6.00 per month from October 5, 1937. That thereafter, on November 12, 1937, the mortgagee, Personal Finance Company of Hammond, Indiana, Incorporated, made demand upon said Flecknoe, for the possession of said automobile, which possession was refused.

Upon the refusal of said Flecknoe to deliver possession of said automobile to the mortgagee, said company filed this action to replevy said automobile, to which action said Flecknoe filed an answer in general denial and a cross-complaint in two paragraphs, (1) setting up his common law lien for the repairs to said automobile and praying judgment in the sum of $67.76, and (2) setting up his demand for the storage of said auto-

mobile and praying judgment in the sum of $75.00 and praying in each paragraph that the respective amount asked therein be declared a first lien on said automobile with priority over said chattel mortgage and that said property be ordered sold to satisfy said liens.

The court entered judgment against the plaintiff, Personal Finance Company of Hammond, Indiana, Incorporated, on its complaint, and for the defendant, Flecknoe, on his cross-complaint. The plaintiff filed a motion for new trial and the overruling of such motion is the only error assigned.

Section 2 of the Chattel Mortgage Act of 1935 (Acts of 1935, ch. 147, p. 498, § 51-502 Burns' 1933, § 13227-2 Baldwin's 1934) contains the following provisions:

"* * * Such mortgage shall be a good and valid lien upon the property therein described and thereby conveyed, which lien from the time of the filing of such mortgage, as provided for herein, shall be a good and valid lien against, and superior to all rights of any and all unsecured creditors of the mortgagor, and any and all subsequent purchasers, mortgagees, lienors and incumbrancers, including judgment creditors, of the mortgagor, and any and all third persons, excepting that the landlord's lien as now provided by law shall be superior to all other liens unless the same is released, waived or subordinated. . . ."

Section 4 of said 1935 Act, *supra* (§ 51-504 Burns' 1933, § 13227-4 Baldwin's 1934), provides as follows:

"The lien of any chattel mortgage which has been executed and filed in accordance with the terms and provisions of this act shall be entitled to priority in all respects over any mortgage, lien or incumbrance which has not been filed with the proper recording officer, and shall be valid and effective in all respects against the mortgagor, existing or subsequent creditors of the mortgagor, subsequent purchasers, and any and all third persons. Any chattel mortgage or other pledge of personal property,

which has not been filed for record in accordance with the terms and provisions of this act, shall be invalid and ineffectual as against all subsequent mortgagees, purchasers and/or creditors of the mortgagor, without actual notice thereof."

The appellant insists that the language of said 1935 Act is decisive of the question in this case. With this contention we can not agree. The decisions of this court have recognized the general rule that a duly executed and recorded chattel mortgage is valid and binding as against the rights of any third persons subsequently acquired. *McCarty* v. *Seisler* (1891), 130 Ind. 63, 29 N. E. 407. This general rule was also stated in the case of *Grusin* v. *Stutz Motor Car Co.* (1933), 206 Ind. 296, 187 N. E. 382, decided prior to the enactment of the 1935 Act. The former chattel mortgage recording act (§ 33-301 Burns' 1933, § 8373 Baldwin's 1934) provided that no chattel mortgage, where the goods covered were not actually delivered to and retained by the mortgagee, should be valid against any other person than the parties thereto, unless such chattel mortgage was properly acknowledged and duly recorded pursuant to the provisions of the statute. By necessary implication, therefore, said statute provided that such chattel mortgage, when properly acknowledged and recorded, should be valid as against any person other than the parties thereto.

This court has recognized an exception to this general rule where from the language of the mortgage or from the surrounding circumstances the mortgagee has either expressly or impliedly consented to the making of the repairs in question. *Watts, Trustee* v. *Sweeney* (1890), 127 Ind. 116, 26 N. E. 680; *Atlas Securities Company* v. *Grove* (1922), 79 Ind. App. 144, 137 N. E. 570; *Grusin* v. *Stutz Motor Car Co., supra; Yellow Manufacturing*

*Acceptance Corp.* v. *Linsky* (1934), 99 Ind. App. 691, 190 N. E. 179, 192 N. E. 715.

We do not believe that the appellant would seriously contend that the language of the 1935 Act would preclude the mortgagee from expressly consenting to the making of the repairs and to subordinating the lien of his mortgage to the lien of the mechanic who made such repairs. Nor do we believe that the language of the 1935 Act prevents the court from implying the consent of the mortgagee to so subordinate the lien of his mortgage. The result of the mortgagee's consent must be the same whether it be given expressly or properly implied from the circumstances. As said by this court in the recent case of *Helms* v. *American Sec. Co. of Indiana* (1939), *ante* p. 1, 22 N. E. (2d) 822, 824:

> "The act of 1935 undertakes to express affirmatively and positively, rather than negatively and by way of prohibition, the rights of a mortgagee of chattels when the instrument is duly recorded in compliance with the terms of the statute. It declares that when such a mortgage is so recorded it is valid against all persons. In this respect it is no stronger and goes no further than did the act of 1852. That which must necessarily be implied from the language used in the statute of 1852 is no less effectual or controlling than that which is expressly declared in the act of 1935."

So as applied to the question in this case, the language of the 1935 Act does not make the lien of the mortgage valid as against the express or implied consent of the mortgagee to have such lien subordinated to a subsequent mechanic's lien.

For a proper determination of the question in this case we must look further than the general rule provided by the chattel mortgage statute and recognized

by the court. We must examine the exception to the general rule and determine whether the language of the mortgage here involved and the surrounding facts and circumstances bring the case within the exception.

The exception, giving an artisan's lien priority over the lien of a mortgage which was prior in point of time, was early recognized in the case of ships. In *Williams* v. *Allsup* (1861), 10 C. B. N. S. 417, a mortgaged ship became unseaworthy and unfit for use. A shipwright, who made only such repairs on the ship as were necessary to make her seaworthy, was declared to have a lien prior to the mortgage which had been duly executed and filed prior to the time the ship was repaired. In its opinion in that case the court said that since the mortgagor was permitted to "continue in the apparent ownership of the vessel, making it a source of profit and a means of earning wherewithal to pay off the mortgage debt, the relation so created by implication entitles the mortgagor to do all that may be necessary to keep her in an efficient state for that purpose." We can easily see that in the case of a seagoing vessel the interest of the mortgagee in keeping the vessel seaworthy, in order that his security may not be lost, could be taken as a sufficient basis for implying his consent to the making of such repairs as were necessary to make the ship seaworthy and thus insure the preservation of his security. This would be true without considering the fact that the vessel was being used to earn funds with which to pay the mortgage debt. Later cases extended the exception to cover cases where the security itself was not endangered by the need for repairs but where the only ground for the implied consent of the mortgagee was based on the fact that the mortgaged property was used in some manner in earning funds with which to pay the mortgage debt. In *Scott* v. *Delahunt* (1875), 65

N. Y. 128, the court held that the lien of a shipwright for repairing a canal boat was superior to the lien of a mortgage recorded prior to the making of the repairs where the owner of the ship continued to operate it as "a source of profit and a means of earning wherewithal to pay off the mortgage debt." The exception has also been held to apply to a buggy used by a physician in calling on his patients, *Drummond Carriage Co.* v. *Mills* (1898), 54 Nebr. 417, and to a hack being used to carry passengers for hire. *Small* v. *Robinson* (1879), 69 Me. 425, 31 Am. Rep. 299; *Hammond* v. *Danielson* (1879), 126 Mass. 294.

In this state in the case of *Watts* v. *Sweeney, supra*, the property in question was a railway engine. A mortgage had been taken on the property of the railway company, including this one engine, which was the only engine owned by the said railway company. Long after the mortgage was in default the railway company was permitted to continue to use the engine in an attempt to earn funds with which to pay the mortgage. As pointed out by the court in that case,

> "Under such circumstances the necessary implication was, and the fair presumption is, that the engine thus mortgaged, but retained by the mortgagor, to be used by him in earning money to pay the mortgage debt, was to be kept in repair; and the further presumption follows that it being machinery requiring skilled mechanics and machinists to repair, it would be intrusted to machinists to make necessary repairs, and such being the understanding of the parties to the mortgage, as fairly inferred from the nature of the machinery and use to be made of it, and by permitting it to be retained and used by the mortgagor long after the mortgage debt matured and the conditions of the mortgage forfeited, the mortgagee was bound to know that such mechanic or machinist would have a lien for the amount of the repairs."

In the Watts case, *supra,* as in the other cases of that type cited above, where the continued use of the chattel by the mortgagor is necessary in order to earn funds with which to pay the mortgage debt, it is only fair to assume that the making of repairs necessary to keep such chattel usable, the use being for the benefit of the mortgagee, would be consented to by him if he knew of the necessity of making them. In cases of this type the courts throughout the country have almost uniformly held that the consent of the mortgagee to the making of the repairs would be implied, and that the lien of his mortgage would be subordinated to the lien of the artisan who made such repairs.

The lien of a mechanic making repairs on a chattel has also been held superior to the lien of a chattel mortgage prior in point of time where the mortgagee had actual knowledge of the repairs being made and made no objection to the making of such repairs. *Broom* v. *Dale* (1915), 109 Miss. 52, 67 So. 659. In the case of *Grusin* v. *Stutz Motor Car Co., supra,* where a mortgage contained a clause which provided that the mortgagor "shall keep said automobile in good repair at his own expense" a mechanic subsequently making repairs on the automobile covered by the mortgage was held to have a superior lien.

A mortgagee who accepts a mortgage containing such a clause and permits the mortgagor to continue to use the automobile is in a position very similar to the mortgagee who has actual knowledge of the repairs being made and makes no objection thereto. The mortgagee after, in effect, ordering the repairs made should not be heard to say that the lien of his mortgage is superior to the lien of the mechanic.

The majority of the courts have granted priority to the mechanic as against the mortgagee only in those

cases (1) where the repairs would constitute a real benefit to the mortgagee by preserving the chattel covered by the mortgage, (2) where the mortgagee had a beneficial interest in the continued use of the mortgaged chattel and the repairs were necessary to such continued use, or (3) where the mortgagee had actual knowledge of the repairs being made or there were circumstances, or language in the mortgage, from which such knowledge could be presumed. An artisan claiming priority for his lien must bring his case within one of these classes. The burden is upon him to show facts from which the consent of the mortgagee may properly be implied.

In the instant case the evidence fails to show such a benefit to the mortgagee as to justify the court in presuming its consent to the making of the repairs and to the subordination of the mortgage lien. There is no showing that the repairs were necessary to preserve the automobile for the mortgagee. The evidence did show that the repairs were necessary to the continued use of the automobile but there was no attempt to show that the continued use of the automobile would earn funds with which to pay the mortgage debt or would in any other manner benefit the mortgagee.

The mere fact that it might be inferred that the repairs in question added some value to the automobile is not sufficient. If this were enough a mechanic might paint the automobile and add all new tires. This would undoubtedly increase the value of the automobile but the cost of such repairs made in 1937 on a 1931 automobile might well amount to more than the total value of the automobile after such repairs were made. To imply the consent of a mortgagee to the making of repairs which might cause him to have no margin of

value left for his security would be beyond reason. The repairs must be reasonably necessary for the preservation of the automobile or necessary to a continued use in which the mortgagee has an interest.

There is no contention in this case that the mortgagee had actual knowledge of the making of the repairs, nor is there any provision in the mortgage requiring repairs to be made by the mortgagor. It is contended by the appellee that since the automobile was left in the possession of the mortgagor it must be assumed that it would be used by him and that, therefore, his consent to the making of such repairs as were necessary to keep it useful must be assumed. With this contention we can not agree. To imply the consent of the mortgagee we must have a state of facts where we might assume that if the mortgagee knew all of such facts he would give his consent. It would be a violent assumption to assume that the mortgagee would consent to the making of repairs which might endanger his security when such repairs were only for the purpose of continuing a use in which he, as mortgagee, was not interested. Nor do the facts of this case require us to grant the mechanic priority for his lien on any ground of commercial convenience or necessity.

The statutes of this state require that one operating an automobile under an Indiana registration number shall have a certificate of title therefor and that any liens or encumbrances on said automobile at the time of the issue of such certificate of title shall be shown thereon (§ 47-301 Burns' 1933, § 11128 Baldwin's 1934), and also require that a receipt of registration of such automobile, showing the name of the registered owner, the owner's post office address and a description of the automobile, shall be carried in the automobile (§ 47-307 Burns' 1933, § 11135 Baldwin's 1934). If the mechanic

does not wish to depend on the personal credit of the apparent owner who brings in an automobile for repairs, it would place no undue burden on such mechanic to investigate the records in the office of the county recorder of the proper county.

The judgment of the trial court is reversed with instructions to grant the appellant's motion for a new trial.