Joe BLACKARD, dba New and Used Car Motor Repair Shop, Plaintiff,

v.

CITY NATIONAL BANK, Defendant.

No. A–10845.

United States District Court
D. Alaska, Third Division.

Aug. 11, 1956.

Hartlieb, Groh & Rader, Anchorage, Alaska, for plaintiff.

Moody & Talbot, Anchorage, Alaska, for defendant.

McCARREY, District Judge.

This matter comes before the Court on motions by both parties for summary judgment under rule 56 of the Fed.R.Civ. P., 28 U.S.C.A.

After the motions for summary judgment were filed, a stipulation of facts was entered into, the material averments of which are succinctly stated as follows:

One Ralph Capehart, an individual doing business under the firm name and style of Anchorage Freight Lines, on October 1, 1953, executed a chattel mortgage upon three trucks to which he held title, to the defendant, City National Bank, as mortgagee. Pursuant to the provisions of the Alaska Motor Vehicle Code, c. 124, sec. 7 of the 1951 Session Laws of Alaska, the mortgage was recorded on the certificate of title of each of the vehicles. Capehart was permitted to retain possession of the mortgaged vehicles and used them in the operation of his freight business.

During the latter part of 1954 Capehart delivered these trucks to the plaintiff, who operates a motor vehicle repair shop, and requested him to repair the same. (We are not informed as to the facts of whether the repairs were necessary for the preservation of the chattels, or the continued use thereof in the operation of the mortgagor's trucking business.) Over a period of time the plaintiff performed extensive repairs and incurred considerable costs for parts and labor, in conformance with the instruction of the owner and mortgagor Capehart.

While the trucks were still in the possession of the plaintiff and on the 17th day of February 1955, the plaintiff recorded his artisan's lien in the office of the U. S. Commissioner for the just and reasonable value of his repairs to said vehicles, and thereafter proceeded to bring an action to foreclose the same. Prior to the foreclosure of this labor lien, a summary foreclosure upon the chattel mortgage was completed by the defendant who purchased the vehicles under this procedure at the sale.

Although the plaintiff remained in possession of the trucks, upon stipulation of the parties, there was a subsequent agreement that defendant should proceed to sell the vehicles, the receipts of such a sale to be held in escrow pending the outcome of this litigation.

In the interim, it appears that the owner and mortgagor Capehart has left the jurisdiction and no longer resides in the Territory of Alaska.

The sole question to be determined is one of priority of liens, as between a recorded chattel mortgage and a subsequently-acquired artisan's lien. A research of the recorded decisions here in the Territory of Alaska indicates that this question is one of first impression.

The Territorial chattel mortgage law provides:

"No conditional sale contract, conditional lease, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession, shall be valid as against the creditors of an owner acquiring a lien by levy or attachment or subsequent purchasers or encumbrances without notice until the requirements of this section have been complied with." Session Laws of Alaska 1951, c. 124, sec. 7.

and,

"Such filing and the issuance of a new certificate of title as herein provided shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, or to subsequent purchasers and encumbrancers." Id., subsec. (4).

The artisan's lien law provides:

"Any person who shall make, alter, repair or bestow labor on any article of personal property at the request of the owner or lawful possessor thereof, shall have a lien on such property so made, altered or repaired, or upon which labor has been bestowed, for his just and reasonable

charges for the labor he has performed and material he has furnished and such person may hold and retain possession of the same until such just and reasonable charges shall be paid." Section 26–3–1, A.C.L.A.1949, from Session Laws of Alaska 1933, c. 113, art. 2, section 11.

and, further,

"Every person who is in possession of a chattel under an agreement for the purchase thereof, whether the title thereto be in him or his vendor, and every other person who is in lawful possession of a chattel shall, for the purpose of this article, be deemed the owner thereof, or authorized agent of the owner, and the lien provided in Section 11 [26–3–1] hereof, when filed as therein provided, is superior to and preferred to any lien, mortgage or encumbrance which may attach to such chattel subsequently to the time of the commencement of the labor or services or the furnishing of the material in said section mentioned, and shall be prior to and preferred to any lien, mortgage or other encumbrance which may have attached thereto prior to the time of which the person, firm or corporation furnishing the material or performing the services had no notice and/or which had not been duly recorded or filed in the manner provided by law." Section 26–3–5, A.C.L.A.1949, from Session Laws of Alaska 1933, c. 113, art. 2, section 15.

■ Determination of priority of liens rests with the legislature, and its intent should be the controlling factor, Camden County Welfare Board v. Federal Dep. Ins. Corp., 1949, 1 N.J.Super. 532, 62 A.2d 416. Unfortunately, the intent of the Territorial legislature in this respect is not clear. We are faced with two statutes drafted at different times, with some rather substantial inferences of difference. There can be no question but that the legislature had the right to fix the chattel mortgage superior to the

artisan's lien or to give the artisan's lien, even where it is subsequently acquired, priority over the mortgage, Guaranty Security Corp. v. Brophy, 1923, 243 Mass. 597, 137 N.E. 751.

Considerable contention in the briefs centers around the wording of 26–3–1 et seq., A.C.L.A.1949, particularly in regard to the matter of reference of 26–3–5, which, establishing preference in the artisan when no recording is made by the antecedent mortgagee, might, by negative implication, preclude his recovery where recording is properly made.

Plaintiff contends that section 26–3–5 does not, in fact, refer to section 26–3–1, as it purports to do, but rather, that the legislature intended that the same refer to 26–3–2, which concerns the right of an artisan to a lien where he has surrendered possession. This argument is keyed upon section 2015 of the 1933 Compiled Laws of the Territory of Alaska, which is identical in all respects with section 26–3–5, except where 26–3–5 specifies "Section 11", the earlier annotation names "Section 2012", which contains section 12 of the act, a section having to do with liens where possession is lost. He argues that if we admit that 26–3–5 subordinates some artisan's liens to some prior recorded mortgages, since the reference is to the section pertaining to non-possessory liens, possessory liens are, within the broad purview of section 26–3–5, paramount. I am of the opinion that the plaintiff's argument here fails, since the original law states, "Section 11".

Resolution of this problem of reference against the plaintiff is not, however, a complete solution. As the plaintiff indicates, section 26–3–5 includes the following phrase: " * * * provided in Section 11 [26–3–1] hereof, *when filed as therein provided* * * * " (Emphasis supplied.) Section 11 (§ 26–3–1) contains no provision for filing. If the artisan retains possession, he has a lien whether he records it or not. The 1951 motor vehicle act, supra, respects this right. The recording provision as to artisan's liens is contained in section 13 (§ 26–3–3) wherein the wording refers

directly to section 12 (§ 26–3–2), the section concerning non-possessory rights in the artisan.

Negative implication, at best a poor guide to legislative intent, in conjunction with the reference problems alluded to above, leaves the Court, insofar as this statute is concerned, without basis for a determination of priority.

The primary concern of the legislatures in the enactment of the motor vehicle acts, which are now in effect in most of the states and territories, was to place some control upon the transfer and traffic in fraud and theft which necessarily was given an impetus, never present in other chattels, because of the intrinsic ease with which the automobile may be transported from one city to the next, indeed, from one end of the country to the other. Many of the enactments have been specifically interpreted as having been made for the purpose of protecting the public from theft, Adkisson v. Waitman, 1950, 202 Okl. 309, 213 P.2d 465; Weigelt v. Factors Credit Corp., 1954, 174 Pa.Super. 400, 101 A.2d 404; Sims v. Sugg, 1949, 165 Kan. 489, 196 P.2d 191. The principal interest of the lawmakers has been to insure the subsequent purchaser that he will not be deprived of something for which he gives value, only to discover it is the property of another. As the Oklahoma court said in the Adkisson case, supra [202 Okl. 309, 213 P.2d 466]:

> "The certificate of title to an automobile issued under a motor vehicle code is not a muniment of title which establishes ownership, but is merely intended to protect the public against theft and to facilitate recovery of stolen automobiles * * *."

In Oslund v. Mansfield, D.C.1952, 107 F.Supp. 220, 222, a case with a rather involved fact situation centering about the relative interests of a conditional vendor and a subsequent purchaser, Judge Folta of the First Division, Territory of Alaska, said:

> " * * * the purpose of the statute [referring to sec. 50–2–1 et seq., A.C.L.A.1949, the predecessor of the present Motor Vehicle Act] is to facilitate the suppression of the traffic in stolen cars by requiring certificates of ownership * * *."

This is not so say, of course, that this was the only concern of the legislators. It is apparent from the statute that something more was intended. It must, however, be retained within the purview of this discussion that the primary concern of the legislature was in that direction. The question left for the Court to determine is if, in their desire to enact a general statute establishing some guide to ownership for the benefit of the police officer and the innocent purchaser, the Territorial legislators intended to preclude artisans, by including them in the term, "encumbrancers" subsection (4) of § 7 of the 1951 act, from the priority they might otherwise have over antecedent mortgagees.

As far as can be determined, the courts in the Territory of Alaska have not had occasion to interpret the term "encumbrancers" specifically. In other jurisdictions the courts have been primarily concerned with it in regard to realty; only infrequently does a definition applicable to personalty appear, see 42 C.J.S. p. 549. In one of those instances when the question of personal property has been at issue, the Arizona court has defined "encumbrance" as "a burden or charge upon property". Hartford Fire Ins. Co. v. Jones, 1926, 31 Ariz. 8, 250 P. 248, 251. In Justice v. Bussard, Ohio Mun. Ct., 1953, 114 N.E.2d 305, however, another court faced the problem of interpreting the word in a similar situation to that with which we are concerned. There the plaintiff, title-holder of an automobile, brought action in replevin to recover his vehicle from a garage operator who claimed an artisan's lien for the reasonable value of repairs to the automobile. The plaintiff contended that the provisions of the General Code of Ohio, section 6290–4, precluded the court from considering the defense since defendant's lien was not recorded on the certificate of title. Section 6290–4 reads thus:

"No person * * * hereafter shall acquire any right, title, claim, or interest in or to said motor vehicle until he shall have issued to him a certificate of title * * *. No court in any case at law or in equity shall recognize the right, title, claim, or interest of any person in or to any motor vehicle, hereafter sold or disposed of, or mortgaged *or encumbered,* unless evidenced by a certificate of title * * * in accordance with the provisions of this chapter." (Emphasis supplied.)

Defendant's asserted lien did not appear on the certificate of title. Plaintiff asserts the court cannot recognize defendant's claim.

In answer to this, the Ohio court said [114 N.E.2d 310]:

"The common-law right of an artisan to retain possession until he has been paid for labor is usually designated a lien, but it cannot be termed either a mortgage or an encumbrance within the purpose and intent of this statute."

■■ It is generally asserted that an artisan's lien, though engrafted upon the statutory law of the jurisdiction, is a common-law right, Williamson v. Winningham, 1948, 199 Okl. 393, 186 P.2d 644 and is accordingly entitled to special consideration in the eyes of the law (Id.; 33 Am.Jur. 436, sec. 33). To interpret "encumbrancers" to include those who acquire rights based on possessory liens would accordingly construe the enactment of 1951 against the common law. Statutes in derogation of the common law are strictly construed and in cases of doubt, that construction will be given them which accords most closely with the common law, Helms v. American Security Co., 1939, 216 Ind. 1, 22 N.E.2d 822; First National Bank of Jamestown, N. Y. v. Sheldon, 1948, 161 Pa.Super. 265, 54 A.2d 61; In re Andrews, 7 Cir., 1949, 172 F.2d 996.

■ The Court cannot be unmindful of the injustices which may occur from an improper interpretation of terms and must seek, in every instance where the legislature does not speak cogently, to discover that interpretation which best fits with the ordered concepts of justice and equity in the jurisdiction. As the Indiana court states in the Helms case, supra [216 Ind. 1, 22 N.E.2d 824]:

"It has accordingly been held that statutes should be construed in the most beneficial way the language will permit to prevent absurdity, hardship, or injustice and to favor public convenience and oppose all prejudice of public interests."

The U. S. Supreme Court has said that the common law of the land is based upon human experience in the unceasing effort of an enlightened people to ascertain what is right and just between men, State of Kansas v. State of Colorado, 1907, 206 U.S. 46, 27 S.Ct. 655, 51 L.Ed. 956. Accordingly, we feel constrained, under the circumstances, to give the term "encumbrancers" the most strict interpretation and to subject it to thorough inquiry.

A survey of those states where decisions give the mortgagee the priority of right generally illustrates situations where the state statute is much more specific than that in this jurisdiction. In Cope v. Jorgenson, 1928, 53 S.D. 544, 221 N.W. 263, 264, the statute, Laws 1925, c. 216, § 2 reads:

" 'That the lien provided for in the preceding section [Artisan's Lien] shall be subject only to mortgages and conditional sale contracts properly filed on or before the time that the property comes into the possession of the lien claimant.' "

In Indiana Truck Corp. of Kentucky v. Hurry Up Broadway Co., 1928, 222 Ky. 521, 1 S.W.2d 990, 991, the statute, Ky. St. § 497, reads:

" 'All bona fide deeds of trust or mortgage shall take effect in the order that the same shall be legally acknowledged or proved and lodged for record * * * The word "creditors" [the statute had subjected all creditors to the above recorded instruments] as used herein shall in-

clude all creditors irrespective of whether or not they may have acquired a lien by legal or equitable proceedings or by voluntary conveyance.' "

In Mahfouz v. Yawn, La.App.1947, 31 So.2d 295, 298, the Louisiana court properly found the chattel mortgage superior where the artisan's lien was by statute, Act No. 209 of 1926, LSA–R.S. 9:4501, inferior to all prior-recorded " 'vendor's lien or privilege, chattel mortgage * * *.' "

The construction sought by the defendant in this matter would subject the garageman to the responsibility, if he wished to be certain to recover the cost of his expended efforts, of checking each vehicle which comes into his custody, to determine if there are any outstanding legal rights other than those of the possessor. However, it has been contended that this would be no problem since he is advised of the rights asserted by the title certificate, City Finance Co. v. Perry, 1953, 195 Tenn. 81, 257 S.W.2d 1, 2, 36 A.L.R.2d 224:

"In the exercise of ordinary care he should have requested Fisher [the mortgagor-possessor] to exhibit his certificate of title which the law required to be in Fisher's possession unless it was being held by a lien holder."

A cursory glance at the title certificate is not sufficient to apprise the lien holder of the legal rights which may, in certain circumstances, be asserted against him. It is patently obvious that to make more than a cursory glance would place such a burden on the garageman that he would be unable to conduct his business on a profitable basis. The equities of the situation lie with the garageman, generally inexperienced in the law and unaware of the subtleties of legal rights.

The injustice of subordinating the materialman to the rights of the mortgagee has prompted some courts to find for the materialman on the basis that, though ordinarily entitled to priority if he is first in time, the mortgagee who allows the mortgagor to continue in possession of the vehicle may be found to impliedly au-

thorize the possessor to subject the vehicle to the lien of the materialman for the reasonable value of those services and materials necessary for the continued operation of the vehicle, Personal Finance Co. of Hammond v. Flecknoe, 1940, 216 Ind. 330, 24 N.E.2d 694; Community State Bank v. Norman, 1949, 119 Ind. App. 82, 82 N.E.2d 705; Maulhardt Equipment Co. v. J. D. Coggins, 1955, 60 N.M. 175, 288 P.2d 1073. Frequently, the necessity of the repairs to the preservation or continued operation of the vehicle will cause the court to subordinate the rights of the mortgagee who has priority of time to those of the materialman, Billups v. Becker's Welding & Machine Co., 1939, 186 Miss. 41, 189 So. 526; Commercial Securities Co. v. Kriner, Miss.1951, 53 So.2d 92; Doss Motor Co. v. Kemp Machinery Service, 1952, 213 Miss. 244, 56 So.2d 707.

It has been stated that where the chattel is an income-producing article, the income of which is used to pay the debt secured by the mortgage, and it is the understanding of the parties that the chattel will be kept in profitable employment, that the lienor who repairs the chattel will have a prior interest (Restatement, Securities, section 76, comment c (1941)). Although pleading these particular facts would certainly strengthen the case for the plaintiff, it is not necessary to the opinion of the court in the matter.

The ultimate settlement of the question of priority should rest with the legislature. The matter is of pronounced significance in the Territory of Alaska, and it is unfortunate that the legislature has not specifically dealt with it before this date. Businesses, necessarily lacking the specialization which often occurs outside the Territory, are often found in the wholly inconsistent position of advocating priority of the mortgage when they sell, and advocating priority of the lien holder's right when another sells and they repair.

In the absence of clear legislative pronouncement to the contrary, this Court feels compelled by the inherent equities of the situation to find for the

artisan-materialman as against the mortgagee. It is felt that the notice afforded the artisan by the Motor Vehicle Act of 1951, without sanction of the specific declaration of the legislature, is not sufficient to override his interest in those chattels which he improves through his efforts. I am unable to find sufficient clarity in the statutes to determine a legislative intent to subordinate his rights. When injury occurs in these situations, it necessarily falls on one of two innocent parties. It is only proper under such circumstances that he who has the greatest business acumen and is in the best position to protect himself should shoulder the burden of the loss. The mortgagee, generally benefitted by the acts of the artisan in the preservation and enhancement of value of the pledged chattel, is in the best position to avoid loss. It is accordingly held that plaintiff's motion for summary judgment is granted and that he have judgment from the proceeds of the sale of the vehicles under the stipulation of the parties, the remainder to be paid to the defendant mortgagee. It is hereby ordered that judgment shall be submitted for the Court's signature in accordance herewith.