Robert DECKER, d/b/a Triangle Service,
Appellant,

v.

AURORA MOTORS, INC., an Alaska
Corporation, Appellee.

No. 593.

Supreme Court of Alaska.

Jan. 10, 1966.

Warren A. Taylor, Fairbanks, for appellant.

Eugene V. Miller, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND
and RABINOWITZ, JJ.

RABINOWITZ, Justice.

The issues to be determined, as framed
by the parties in this appeal, relate to a
question of priority between a prior record-
ed security interest in a motor vehicle and
a subsequent mechanic's lien.  We are of
the opinion that the trial court's resolution
of these issues in favor of the security
interest holder was correct.

On July 9, 1963, appellee, Aurora Motors,
Inc., as seller, and Darrell D. Lynn, as
buyer, executed a "Retail Instalment Con-
tract" for the sale of a used 1963 Pontiac

automobile.[1]  Under the terms of this agreement Lynn was obligated to pay the sum of $111.13 monthly (commencing on August 16, 1963) until payment of the purchase price was completed.  On July 31, 1963, the Department of Revenue of the State of Alaska issued a certificate of title to the vehicle of Lynn.  The certificate disclosed that there was a lien against the vehicle in the amount of $2,940.66.[2]

On July 9, 1964, appellant, Robert Decker, d/b/a Triangle Service, at the request of Lynn performed labor and furnished materials in connection with the repair of the vehicle.[3]  After appellant unsuccessfully attempted to obtain payment for the labor and materials furnished in the repair of the Pontiac, he retained possession of the vehicle.

Subsequently, on August 5, 1964, appellee instituted this replevin action against both Lynn and appellant alternatively seeking recovery of the vehicle or the sum of $1,500.00 in lieu of recovery of the vehicle.  In essence appellee alleged that its lien and right to possession thereunder was prior to appellant's rights under his possessory mechanic's lien.  Appellant, in his answer, denied that his lien was secondary and further denied that appellee's lien was prior under our law.  The matter then came before the trial court on appellee's motion for summary judgment and, as previously indicated, summary judgment was granted to appellee.[4]

In 1951, our Territorial Legislature enacted the Alaska Motor Vehicle Act.[5]  Pertinent to the resolution of the issues in this appeal are two sections of this 1951 act. Section 7 of the act provided that:

> No conditional sale contract, conditional lease, chattel mortgage, or other lien or encumbrance or title retention instrument upon a registered vehicle, other than a lien dependent upon possession, shall be valid as against the creditors of an owner acquiring a lien by levy or attachment or a subsequent purchaser or encumbrancer without notice until the requirement of this section have been complied with.[6]

Subsection (4) of section 7 of the Alaska Motor Vehicle Act provided:

> Such filing and the issuance of a new certificate of title as herein provided shall constitute constructive notice of all liens and encumbrances against the vehicle described therein to creditors of the owner, or to subsequent purchasers and encumbrancers.

In Blackard v. City Nat'l Bank,[7] the territorial court was called upon to determine the question of priority of liens between a recorded chattel mortgage and a subsequently acquired artisan's lien for labor and materials furnished in the repair of certain vehicles.  The court in Blackard recognized that the "[d]etermination of priority of liens rests with the legislature, and its intent should be the controlling factor" and that "the legislature had the right

---

1.  Lynn was originally named as a co-defendant with appellant Decker.  Lynn has not appealed from the entry of summary judgment below.

2.  The certificate of title in its pertinent portions reads as follows:
    Lien file No. 192280  Date of Lien 7/9/63
    Nature of Lien CSC
    <br>Am't $ 2940.66

3.  The total value of the services and materials furnished by appellant was $284.-04.

4.  The judgment reads in part:
    In the event the automobile should be destroyed, or the Defendants or their

duly authorized agents or persons having possession of said vehicle, shall fail to deliver the automobile to the Plaintiff, the Defendants shall jointly and severally pay unto the Plaintiff, the sum of $1,500.00 with interest thereon at the rate of six per cent (6%) per annum from the 9th day of July, 1963, until said sum is paid in full.

5.  SLA 1951, ch. 124.

6.  This section, with slightly modified wording, is now AS 28.10.470.

7.  142 F.Supp. 753, 16 Alaska 344 (D. Alaska 1956).

to fix the chattel mortgage superior to the artisan's lien or to give the artisan's lien, even where it is subsequently acquired, priority over the mortgage".[8] As viewed by the court in Blackard, the controlling question was whether

the Territorial legislators intended to preclude artisans, by including them in the term, 'encumbrancers' subsection (4) of § 7 of the 1951 act, from the priority they might otherwise have over antecedent mortgagees.[9]

In granting summary judgment for the artisan, the court in Blackard concluded that:

In the absence of clear legislative pronouncement to the contrary, this Court feels compelled by the inherent equities of the situation to find for the artisan-materialman as against the mortgagee. It is felt that the notice afforded the artisan by the Motor Vehicle Act of 1951, without sanction of the specific declaration of the legislature, is not sufficient to override his interest in those chattels which he improves through his efforts. I am unable to find sufficient clarity in the statutes to determine a legislative intent to subordinate his rights.[10]

Subsequent to the decision in Blackard, the legislature in 1957 amended subsection (4) of section 7 of the Alaska Motor Vehicle Act of 1951. As amended the subsection in question (AS 28.10.510) now reads as follows:

The filing and the issuance of a new certificate of title is constructive notice of all liens and encumbrances against the vehicle described in the certificate to creditors of the owner, or to subsequent purchasers and encumbrancers. *However, an encumbrance or lien on a vehicle for work, labor, material, transportation, storage, or similar activity, whether or not dependent on possession for its validity, is subordinate only to mortgages, conditional sales contracts, or similar encumbrances or liens properly filed on or before the time that the vehicle is subject to, or comes into possession of, the encumbrance or lien claimant.* (emphasized portion indicates the 1957 amendment.) [11]

In view of the Legislature's 1957 amendment to subsection (4) of section 7 of the Alaska Motor Vehicle Act of 1951, we are of the opinion that the trial court was correct in concluding that Blackard v. City Nat'l Bank "should not be followed." By virtue of the 1957 amendment, the Legislature clearly indicated its intent to subordinate the lien of a mechanic-artisan to the lien of a prior recorded security interest.

Analysis of the statutory provisions relating to mechanic's liens also supports our conclusion that the Legislature intended, by virtue of the 1957 amendment, to subordinate a mechanic's lien in a situation such as we have in this appeal. AS 34.35.-175(a) provides:

A person who makes, alters, repairs or labors upon an article of personal property at the request of the owner or

---

8. Blackard v. City Nat'l Bank, supra note 7, 142 F.Supp. at 755, 16 Alaska at 349.

9. Blackard v. City Nat'l Bank, supra note 7, 142 F.Supp. at 756, 16 Alaska at 352. As an example of the type of statute which specifically gave the mortgagee priority of right, the court in Blackard set forth the statute of South Dakota which read:
   That the lien provided for in the preceding section [Artisan's Lien] shall be subject only to mortgages and conditional sale contracts properly filed on

or before the time that the property comes into the possession of the lien claimant.
   Id. 142 F.Supp. at 757, 16 Alaska at 354.

10. Blackard v. City Nat'l Bank, supra note 7, 142 F.Supp. at 758–759, 16 Alaska at 356–357.

11. SLA 1957, ch. 20, § 1 which is now AS 28.10.510. Note: The title of the 1957 act reads: "AN ACT To amend Section 7(4) of Chapter 124, SLA 1951, relating to the priority of lien claimants on a vehicle; and declaring an emergency."

lawful possessor has a lien on the property for his just and reasonable charges for the labor performed and material furnished. The person may keep possession of the article until the charges are paid.[12]

In regard to the priority of mechanic's liens, AS 34.35.200 states:

> The lien provided in § 175 of this chapter, when filed as provided in that section, is superior to and preferred to
> * * *
>
> (2) a lien, mortgage, or other encumbrance which attaches before that time, *when the person furnishing the material or performing the services did not have notice of the prior lien, mortgage, or encumbrance, or the prior lien, mortgage, or encumbrance was not recorded or filed in the manner provided by law.*[13] (emphasis furnished.)

AS 34.35.200(2) when read in conjunction with subsection (4) of section 7 (as amended) of the Alaska Motor Vehicle Act of 1951 further evidences the Legislature's in-

tent to subordinate the mechanic's lien. The provisions of AS 28.10.510 furnish the notice which subordinates the mechanic's lien under the language of AS 34.35.200(2).[14]

Since the Retail Instalment Contract in question was entered into on July 9, 1963, it is subject to the provisions of the Uniform Commercial Code which became law in this jurisdiction on December 31, 1962.[15] In our opinion nothing contained in the Uniform Commercial Code alters our conclusion as to the question of priorities under AS 34.35.200(2) and AS 28.10.510.

Section 9.310 of the Uniform Commercial Code provides:

> When a person in the ordinary course of his business furnishes services or materials with respect to goods subject to a security interest, *a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise.*[16] (emphasis furnished.)

---

12. Subsections (b) (c) and (d) grant the lien holder the right of sale and establish the procedure to be followed in the sale.

There is no question that Lynn under the terms of the Retail Instalment Contract was an "owner or lawful possessor" under the provisions of AS 34.35.175(a). See AS 34.35.195 which provides:

> The following persons are considered the owner of a chattel, or the authorized agent of the owner, for the purpose of §§ 175—215 of this chapter:
> (1) a person in possession of the chattel under an agreement to purchase it, whether the title to it is in him or in his vendor;
> (2) a person in lawful possession of the chattel. * * *

13. AS 34.35.200 was enacted into law in 1933. See SLA 1933, ch. 113, § 15.

14. There is no contention in this appeal that appellee's security interest was not recorded or filed in the manner provided by law. See AS 28.10.480 and AS 45.05.734(c) (2).

15. SLA 1962, ch. 114, § 10.101.

16. This section has been codified as AS 45.05.750. Appellee's interest under the

July 9. 1963, Retail Instalment Contract is a "security interest" as that term is used in AS 45.05.750 and throughout the Uniform Commercial Code. AS 45.05.-020(37), which is the general definition section of the Uniform Commercial Code, provides in part as follows:

> '[S]ecurity interest' means an interest in personal property or fixtures which secures payment or performance of an obligation; the retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer (§ 126) is limited in effect to a reservation of a 'security interest' * * *.

Paragraph number 1 of the "Provisions" portion of the July 9, 1963, Retail Instalment Contract provides that:

> For the purpose of securing payment of the obligation hereunder, the seller reserves title, and shall have a security interest, in said property until said obligation is fully paid in cash.

Paragraph number 6 of the "Provisions" section provides:

> In the event buyer defaults in any payment due hereunder, or fails to comply with any of the terms or conditions hereof, or a proceeding in bank-

The Official Code Comment to Section 9.310 of the Uniform Commercial Code states in part:

\* \* \* Under chattel mortgage or conditional sales law many decisions made the priority of such liens turn on whether the secured party did or did not have 'title.' This Section changes such rules and makes the lien for services or materials prior in all cases where they are furnished in the ordinary course of the lienor's business and the goods involved are in the lienor's possession. *Some of the statutes creating such liens expressly make the lien subordinate to a prior security interest. This Section does not repeal such statutory provisions.* \* \* \* (emphasis furnished.)

■ From a reading of the text of Section 9.310 and the comment thereto, it is clear that the priority given to a mechanic's or artisan's lien by Section 9.310 (AS 45.-05.750) is controlling unless our statute

pertaining to a mechanic's lien "expressly provides otherwise." We are of the opinion that AS 34.35.200(2) expressly subordinates a mechanic's lien to a prior recorded (perfected) security interest under AS 28.-10.510 and therefore the priority given to a mechanic's lien by Section 9.310 is not applicable here.

Appellant argues that despite any statutory priority that may have been accorded to appellee's security interest over his mechanic's lien appellee impliedly subordinated its security interest and impliedly consented to the repairs in question by allowing Lynn to have possession and use of the vehicle under the terms of the Retail Instalment Contract. In support of this contention appellant relies upon the wording of Section 9.316 of the Uniform Commercial Code, now codified as AS 45.05.762.[17] AS 45.05.762 provides:

Nothing in §§ 690—794 of this chapter prevents subordination by agreement by a person entitled to priority.[18]

ruptcy, receivership or insolvency be instituted against the buyer or his property, or the seller deems the property in danger of misuse of confiscation, or in the event either that the buyer fails for any reason to comply with paragraph 3(a) above or that said required car insurance (whether procured by the seller or by the buyer) is cancelled by the insurer prior to expiration thereof, the seller shall have the right, at his or its election, to declare the unpaid balance, together with any other amount for which the buyer shall have become obligated hereunder, to be immediately due and payable. Further, in any such event, seller or any sheriff or other officer of the law may take immediate possession of said property without demand, and without process, including any equipment or accessories thereto; and for this purpose seller may enter upon the premises where said property may be and remove same. Seller may take possession of any other property in the hereinbefore-described motor vehicle at time of repossession, wherever such other property may be therein, and hold same temporarily for buyer without liability on the part of seller. Such repossession shall not affect seller's

right, hereby confirmed, to retain all payments made prior thereto by the buyer hereunder.

In the event of repossession of said property, the seller shall have such rights and remedies as are provided and permitted by law, including the right to retain from the proceeds of the disposition of said property attorneys' fees in the amount provided in paragraph 4, above, and other legal expenses incurred for the purpose of retaking and disposing of said property.

17. Appellant in his brief also relies on Blackard v. City Nat'l Bank, supra note 7, 142 F.Supp. at 758, 16 Alaska at 355–356, and on several of the authorities cited in the text of the Blackard opinion.

18. The Official Code Comment to this Section reads in part:

\* \* \* This Section is inserted to make it entirely clear that a person entitle to priority may effectively agree to subordinate his claim. Only the person entitled to priority may make such an agreement: his rights cannot be adversely affected by an agreement to which he is not a party.

See also AS 45.05.754(d).

Paragraph 2 of the "Provisions" section of the Retail Instalment Contract states in part:

> The buyer shall keep said property free of all taxes, liens and encumbrances * * *.

In light of the above, and upon a reading of the entire text of the Retail Instalment Contract, we concur in the trial court's conclusion that appellee did not agree to subordinate the priority it was entitled to by virtue of AS 28.10.510 and AS 34.35.200(2). We are of the further opinion that AS 45.05.762 (§ 9.316), when read in conjunction with AS 28.10.510 and AS 34.35.200(2), precludes finding subordination by implication.[19]

Appellant additionally contends that appellee waived, or lost, its security interest in the vehicle when it made application for and attached the vehicle in question. Appellant also argues that the trial court lost jurisdiction of the action when, subsequent to granting summary judgment in appellee's favor, it "dissolved" the writ of attachment.

The record reflects that in its affidavit in support of the writ of attachment appellee's secretary-treasurer stated:

> That the payment of the same [the $1,500.00 balance due on the Pontiac] has not been secured by any mortgage, lien or pledge upon real or personal property * * *.[20]

Appellee in its brief admits that it improperly obtained a writ of attachment instead of proceeding under AS 09.40.260, AS 09.40.270 and Civ.R. 88(a) and (b).[21] Despite the foregoing, appellee argues that appellant was in no way prejudiced by appellee's obtaining a writ of attachment. In Herning v. Wigger[22] we said:

> Even if it could have been said that the trial court erred in refusing to vacate the writ, the defendants have made no claim or showing that they were prejudiced in some substantial way by the trial court's action.[23]

19. In addition to the foregoing, see Annot., 36 A.L.R.2d 198 (1954). In discussing the general law (without regard to the Uniform Commercial Code), in this area, it is stated at page 200 of the annotation that:
> * * * As a result a number of courts have raised an implication of an authorization for the work done from the vendor's act in permitting the vendee to have possession of and use property of a nature which, from such use, is likely to need repairs, the theory being that this act made it possible for the vendee to mislead the artisan, and that in any case the work benefits the vendor by preserving his security, or, if the use is a commercial one, by insuring the continued earning of money which will be available to pay the sale price. However, a number of courts have rejected this theory, holding that any such implication is purely fictional and does violence to the rights of a conditional vendor who is using a legitimate business device and has taken all proper steps to protect himself.
(Note: The authorities refusing to infer consent to repair and subordination of lien from possession and use are collected at pages 216–17 of the annotation.)

Blackard v. City Nat'l Bank, supra note 7, 142 F.Supp. at 758, 16 Alaska at 355–356, discussed authorities which had found implied consent on the part of the security holder to permit repairs and consequent subordination of his security interest. The passage by the Legislature subsequent to Blackard, of its 1957 amendment to subsection (4) and section 7 of the Alaska Motor Vehicle Act of 1951 leads us to conclude that the Legislature intended thereby to reject the doctrine of subordination by implication.

20. The first portion of this affidavit refers to the Retail Instalment Contract.

21. These provisions of our Code of Civil procedure and Rules of Civil Procedure establish the right to, and provide the procedure governing the obtaining of possession of personal property after an action to recover possession of personal property has been commenced.

22. 398 P.2d 1002, 1007 (Alaska 1965).

23. In Herning v. Wigger, supra note 22, at 1007, we found that the affidavit was not false and the attachment writ was proper.

In light of the foregoing and our conclusion as to priorities in this case, we are of the opinion that appellee, by obtaining of a writ of attachment, did not waive its security interest in the vehicle or prejudice any rights of appellant.[24] We are of the further opinion that the trial court acted properly in disallowing all costs previously granted to appellee in regard to the attachment and in reducing the amount of attorney's fees previously awarded to appellee.[25]

For the reasons stated, the summary judgment granted by the trial court is affirmed.[26]

---

24. See Cowart v. W. E. Caldwell Co., 134 Ga. 544, 68 S.E. 500, 30 L.R.A.,N.S., 720 (1910); Fisher v. Globe Brewing Co., 170 Va. 509, 197 S.E. 490, 116 A.L.R. 1211 (1938); and Civ.R. 61.

25. Note: Although strongly disapproving of appellee's actions in obtaining a writ of attachment, the trial court never vacated or "dissolved" the attachment. Even if the trial court had vacated or "dissolved" the attachment, it would not, by so doing, lose jurisdiction over the subject action. See authorities note 24, supra.

26. As indicated previously, we are not called upon in this appeal to determine any issues pertaining to the procedure for, or the parties' rights to, foreclosure of their respective liens.